Settle order on five days' notice.

---

## PHILIP HILTON

### *v.*

## JOSEPH HILTON.

[Decided October 7th, 1918.]

1. Ignorance of the law, or acting upon the advice of counsel, is no excuse for commission of a contempt, so far as the adjudication itself goes.

2. The excuse that a defendant gave orders immediately to change his signs and the labels for his goods, but has not yet substituted new labels on account of labor shortage, cannot be accepted as an excuse for disobedience of an order of this court. No excuse will be accepted except a physical impossibility to comply with the order of the court.

3. If, as a means of purging himself of his contempt, the defendant offers to change his practice in such a manner as will appear to the court to be in accordance with the injunction, this will be considered by the court.

4. In proceedings to punish for contempt for violation of an injunction restraining the use of a name in a certain manner, no greater proof is necessary to establish a violation than was necessary to warrant the injunction in the first instance.

---

On bill, &c.

*Messrs. Pitney, Hardin & Skinner (Mr. Hardin* and *Mr. Stanley),* for the complainant.

*Mr. Selick J. Mindes* and *Mr. Robert H. McCarter,* for the defendant.

LANE, V. C. (orally).

The final injunctive order came to the knowledge of defendant on or about the 29th day of July, 1918. His counsel had had notice of it prior to that time and there had been several conferences following the handing down of the opinion of the court of errors and appeals on June 17th, 1918, with a view to ascertaining a method by which the decree of the court, which would be entered on that opinion, could be complied with. The injunction forbids defendant from using the name Hilton or Hilton's alone or in such manner as to lead or induce the public to believe that the goods sold and manufactured by him are manufactured and sold by complainant, and that the business conducted by defendant is the same as or part of the business conducted by complainant and "from using any emblem or device resembling the trade emblem of complainant in any way in his business and from conducting his business so as to deceive the public and induce it to believe that the goods manufactured or sold by defendant were manufactured or sold by complainant, and that the business conducted by defendant is the same as or a part of the business conducted by complainant."

The original decree followed a long hearing at the conclusion of which it had been adjudged by this court, which judgment was affirmed by the court of errors and appeals, that the method in which the defendant was then using the name Hilton or Hilton's was such as to bring it within the bar of the injunction. It was the duty of defendant, therefore, immediately upon being served with the injunctive order to stop the use of the names, labels and symbols in the manner in which he was using them. His continuance in the use of them after service of the injunction for any length of time was a contempt of this court. If *bona fide* he had desired to change his practice so as to operate his business in a manner which would be in accordance with the decree of the court, and desired a reasonable opportunity to make the change, his right was to have applied to this court for a stay of the injunctive order, and no doubt if this court had been

satisfied that he was acting *bona fide* it would have granted the stay, and might have gone further and advised him, or modified the decree to such an extent as to indicate more clearly than did the final decree, just exactly what he might do or might not do. He did not do this. For a considerable length of time he continued his business in the manner which had been denounced by both this court and the court of errors and appeals. His excuse that he gave orders immediately for a change, and that because of labor conditions, it was not possible for him to have the words "J. Hilton, Prop." put on the signs within a short space of time; that he had not yet substituted new labels, but has still continued the use of the old labels because of labor shortage, cannot be accepted for a disobedience of an order of this court. No excuse will be accepted except a physical impossibility to comply with the order of the court. There was no physical impossibility in this case. The defendant might have, and he was obliged to, if necessary to comply with the order of the court, closed his entire business. What punishment may be meted out to him for his disobedience of the order of the court will, of course, depend to a large extent upon his knowledge of the law, upon his knowledge of the situation, upon the question as to whether he was acting under advice of counsel or not. But, as I said in the case of *In re Bowers, 89 N. J. Eq. 307*, advice of counsel, or ignorance of the law, is no excuse for the commission of a contempt, so far as the adjudication itself goes. The defendant, therefore, will be adjudged guilty of a contempt of court. The adjudication may rest entirely upon the actions which were committed after the service of the injunction and before the placing of the words "J. Hilton, Prop." on the signs. Whether the contempt was continued down to the present time is another question.

I recognize that a layman is put by an injunctive order such as has been made in this case in a very unfortunate position. He is directed to refrain from doing something which may tend to deceive the public. Now, whether a thing tends to deceive the public or not is a matter of fact and inference. Acting *bona fide* he may do certain things which he does not believe tends to deceive the public, and yet the court may differ with him, and,

because the court differs with him, although he had acted in a manner which he had thought proper, he may be guilty of contempt. I endeavored to avoid such an effect in the original decree because I could not conceive at the time that that decree was made that the word "Hilton" or "Hilton's" could be used in such a manner as that the public would not be deceived—that is, in such a manner in a competitive business, and I therefore enjoined defendant from using the name Hilton or Hilton's in any manner whatever in the competitive business. I suppose I should have (it might have made some difference in the court of errors and appeals) reserved to the defendant the right to apply to this court to use the name in a certain specified manner, in which event the court might then have permitted him to have used the name in a manner which the court would then find, in advance, would not tend to deceive or defraud the public. The court of errors and appeals took a different view from me and must have assumed that the name Hilton or Hilton's might possibly be used in some manner or other in such a way as not to deceive the public in a competitive business. It has put the burden, in the first instance, upon the defendant to experiment and make himself liable, if his experiment does not work out. As I presently view it, I think the addition of the words "J. Hilton" to the sign, and the change in the label which has been made, is not a sufficient change in the method of operating the business to relieve it of the criticism I made of it in the original case. It seems to me, as was said by the court of errors and appeals in the case of *Roger* v. *International Silver Co.* or *International Silver Co.* v. *Rogers, 72 N. J. Eq. 933* (at *p. 938*), in reference to the use of the name Rogers, that the addition of the words "J. Hilton," far from tending to remove the confusion, may tend to increase it. The public does not know generally who the proprietor of the Hilton Company is. J. Hilton may be the proprietor of both the Hilton Company and Hilton's, so far as the general public are concerned. There is nothing to indicate to the public mind that the Hilton business, which is owned by J. Hilton, is not that of the original Hilton Company. In the *Rogers Case,* Rogers was forced to stamp upon his goods, and put upon his signs a statement that the business was not

connected in anywise with the original Rogers; in other words, I think upon the defendant was put the burden of indicating to the public that his business was not the business, not only not the business of another competitor known as the Hilton Company, but not the business of another competitor known as the Hilton Company, which was the Hilton Company prior to his entering the field. I do not think that if the defendant should add to his sign "not connected with the Hilton Company," it would save the situation.

I express no opinion at this time upon the question as to whether the use of the words "J. Hilton & Co." will be permitted because, for one reason, I cannot conceive, unless both sides agree, that I have any authority to pass upon such a question at this time. The way the decree is now left by the court of errors and appeals, the only authority now left to this court, is to determine whether or not a contempt has been committed. If the defendant desires to make a record, I suppose he can apply to this court for permission to modify this decree in some way and to permit him to use the word "Hilton" in a certain manner to be prescribed by the court. Whether that can be done after the decree of the court of errors and appeals I do not now determine.

Vice-Chancellor Howell, in the case I referred to during the argument, reported in *81 N. J. Eq. 416*, approved by the court of errors and appeals (*81 N. J. Eq. 513*), held that in cases such as this in order to warrant the court in issuing an injunction, it is not necessary there be proof of actual confusion. I reiterated that in the *Hilton Case* originally and the court of errors and appeals did not see fit to dissent from it or overrule it. I think that no greater proof is necessary in an application to punish for contempt than is necessary to secure an injunction in the first instance. Considering the entire case, the facts and circumstances surrounding it, and whatever proof actually there is in the case, I am bound to conclude that the use of the word "Hilton's," in the manner that it is now being used, with the addition of the words "J. Hilton, Prop.," leads to confusion, that it is bound to.

I will, as above indicated, adjudge the respondent guilty of a contempt of this court and will not at this moment pass upon

the question as to whether I think the use of the term "J. Hilton & Co." would be proper. The matter is not now squarely presented to me. I will hear counsel as to what punishment ought to be imposed.

If, as a means of purging himself of his contempt, the respondent offers to change his practice in such a manner as will appear to me to be in accordance with the injunction, it may be that I will permit him to purge himself.