CURTIS & HILL GRAVEL AND SAND COMPANY

*v.*

STATE HIGHWAY COMMISSION et al.

[Decided April 23d, 1920.]

1. In statutory interpretation, the meaning to be ascribed to the legislative phraseology is the natural and ordinary meaning thereof, unless a contrary intent appear; this is true of the title as well as of the body of the act.

2. Where in the title of an act, an enumeration of words of specific significance are followed by words of general import, the latter are ordinarily to be understood as limited to things of like kind to the ones specifically mentioned.

3. Under constitution, article 4, section 7, *placitum* 4, the enacting part of a statute can have no effect beyond the object expressed in the title.

4. Where the enacting part of a statute is susceptible of two interpretations, one of which would and the other of which would not, render the same unconstitutional as exceeding the object expressed in the title, the latter is to be adopted.

5. An interpretation which would make a statute operative to affect the state is not to be ascribed to legislation unless that purpose be clearly indicated.

6. The state highway commission, created by *P. L. 1917 p. 35*, is an *alter ego* of the state itself, and is not a "municipality" under the Municipal Mechanics' Lien act. *Rev. 1918.*

7. The provisions of the Municipal Mechanics' Lien act (*Rev. 1918*) do not apply to labor or materials for the performance of contracts made by the state highway commission.

On motion to strike out bill of complaint.

*Messrs. McCarter & English,* for the complainant.

*Mr. Thomas F. McCran,* attorney-general, with whom was *Mr. Francis H. McGee,* for the defendants the State of New Jersey and State Highway Commission of the State of New Jersey.

*Messrs. Harris & Harris,* for the defendants Eisenberg and Mixner.

BUCHANAN, V. C.

The bill is filed by the complainant, under the provisions of the "Municipal Mechanics' Lien law (*Rev. of 1918*)," as a subcontractor who furnished materials used in the construction of one of the sections of the state highway system; such materials being furnished by complainant to defendant Eisenberg, who was himself a subcontractor furnishing labor and material under a contract with defendant Mixner, who was the main contractor, actually constructing the road, under contract between himself and the state highway commission. Complainant not having received payment for the materials furnished, filed a lien claim with the state highway commission and now sues to enforce his lien claim and to procure payment thereof out of the moneys due or to become due from the state highway commission to defendant Mixner.

The motion to dismiss is joined in by all the defendants, and the grounds assigned are the alleged lack of jurisdiction of this court to entertain the bill—defendant's contention being that the contract set forth in the bill is made with the state itself or the state highway commission, and in either event is not a contract with a municipality, and hence, not such a contract as is covered by the statute and complainant is therefore not entitled to file the bill.

It was, and must needs be, conceded that complainant's right to bring the bill in this court is to be found, if anywhere, only in the provisions of the statute referred to. The only question is whether the party with whom Mixner's main contract was made—*i. e.;* the state highway commission—comes within the classification specified in the act.

The lien is given by section 1 of the act, under certain conditions, to

"any person who as laborer * * * or sub-contractor, shall hereafter, in pursuance of or conformity with the terms of any contract for any public improvement made between any person or corporation and *any county, city, town, township, public commission, public board or other municipality in this state authorized by law to make contracts for the making of any public improvement,* perform any labor or furnish any material toward the performance or completion of any such contract."

Admittedly, the contract between Mixner and the state high-way commission (which contract will be hereafter designated herein as "the contract") is for a public improvement and the state highway commission had legal authority to make it. Defendant's argument, however, is substantially as follows: ·

I. The state highway commission is not a municipality, either
  A. by strict definition, nor
  B. by broad definition, for
    1. It has no powers of local government.
    2. It is not a corporation either
        a. by express enactment, or
        b. by necessary implication from powers granted.
II. Even if it be a municipality, it is not a municipality of the kind contemplated by the statute.
  A. It is not a city, town, township or county.
  B. The title of the act is limited to those or similar municipalities.
  C. The body of the act must also be construed to be likewise limited.
    1. Because otherwise the act would be unconstitutional.
  D. The state highway commission is not similar to city, county, town or township.
    1. A vital dissimilarity is that a suit against it is in effect a suit against the state itself.
    2. Statutory authority for a suit against the state must be clear and unambiguous.

It must be conceded that the state highway commission does not fall within the strict definition of municipal corporations.

Dillon (*1 Mun. Corp. (5th ed.)* §§ *18, 31, 32*) says:

"Sec. 18. Municipal corporations are institutions designed for the local government of towns and cities; or, more accurately, towns and cities, with their inhabitants, are, for purposes of subordinate local administration, invested with a corporate character."

"Sec. 31. A municipal corporation, in its strict and proper sense, is: the body politic and corporate constituted by the incorporation of the inhabitants of a city or town for the purposes of local government thereof. Municipal corporations as they exist in this country are bodies politic and corporate of the general character above described, established by law partly as an agency of the state to assist in the civil government of the country, but chiefly to regulate and administer the local or internal affairs of the city, town or district which is incorporated."

424  CASES IN CHANCERY, 1920.

Curtis & Hill, &c., Co. v. State High. Com.    91 N. J. Eq.

"Sec. 32. We may, therefore, define a municipal corporation in its historical and strict sense to be the incorporation, by the authority of the government, of the inhabitants of a particular place or district, and authorizing them in their corporate capacity to exercise subordinate specified powers of legislation and regulation with respect to their local and internal concerns. This power of local government is the distinctive purpose and the distinguishing feature of a municipal corporation proper."

McQuillin (*1 Mun. Corp.* § 107) says:

"In the English law, under the Municipal Corporations act, 1882, 'municipal corporation' means 'the body corporate constituted by the incorporation of the inhabitants of a borough.' In England, as in this country, it is the inhabitants who are incorporated, and not the officers or the council or governing legislative body through whom they act.

"In American law a municipal corporation may be described to be a legal institution, or body politic and corporate, established by public law, or sovereign power, evidenced by a charter, with defined limits and a population, a corporate name and perpetual succession, primarily to regulate the local or internal affairs of the territory or district incorporated by officers selected by the corporations, and secondarily, to share in the civil government of the state in the particular locality.

"The characteristic feature beyond all others is the inherent right of local self-government."

Bouvier (*Rawle's (3d Rev.) 2269*) gives the following definitions:

"A public corporation, created by government for political purposes, and having subordinate and local powers of legislation; e. g., a county, town, city, &c. 2 Kent 275; Ang. & A. Corp. 9, 29; Bonaparte v. R. Co., Baldw. 222; Fed. Cas. No. 1, 617. An incorporation of persons, inhabitants of a particular place, or connected with a particular district, enabling them to conduct its local civil government. Glov. Mun. Corp. 1."

But the name is frequently used with very much broader signification. Quoting again from Dillon (volume 1, section 32):

"The phrase 'municipal corporation' is used with us in general in the strict and proper sense just mentioned; but sometimes it is used in a broader sense that includes also public or *quasi*-corporations, the principal purpose of whose creation is as an instrumentality of the state, and not for the regulation of the local and special affairs of a compact community."

And McQuillin (volume 1, page 256) quotes the following from *Fairl. Mun. Admin.*:

"In English and American law a municipality is any subordinate public authority created by the central government and vested with the legal rights of a corporation. The term applies to the local authorities in cities, villages, counties, special authorities, such as school and park boards, and even to incorporated townships, as in Massachusetts. In this sense, municipal administration would include the whole field of local government."

It is not necessary to refer to decisions in other states (*Cf. Words & Phrases, tits. "Municipal," "Municipal Corporations," "Municipality"*) to substantiate the soundness of the doctrine that the term as used in legislative enactments is not limited to the strict or original meaning. Not only are there numerous adjudications of our own courts in that behalf (some of which will be hereinafter alluded to), but it has been specifically held by this court that in the statute (*P. L. 1892 p. 369*) preceding the present Municipal Mechanics' Lien law, the word must be deemed to have been used not in its narrow sense, but with a broad signification—in a sense sufficiently broad to include "counties" within the category of "cities, towns, townships and other municipalities." *Herman et al.* v. *Essex Freeholders, 71 N. J. Eq. 541; affirmed, 73 N. J. Eq. 416; Union Stone Co.* v. *Hudson Freeholders, 71 N. J. Eq. 657.*

Indeed, Vice-Chancellor Garrison, in the latter case, in his interpretation of the meaning of the legislative enactment of 1892, *supra,* goes so far as to say: "I think it is clear that the legislature meant to include in this legislation any public corporation whose functions included the making of public improvements, whether in any other sense of the word 'municipality' the said public corporation could be properly included or not."

This language would, of course, include the state highway commission, if the latter be deemed a corporation. There is nothing in the present act to indicate any intention on the part of the legislature to restrict the application of the law within narrower confines than that of the previous act, as thus judicially interpreted. On the contrary, the use of the words "public commission, public board," in the present act, might be argued to indicate, if anything, an intent to broaden the scope of its application, by eliminating from Vice-Chancellor Garrison's defi-

426          CASES IN CHANCERY, 1920.

Curtis & Hill, &c., Co. v. State High. Com.     *91 N. J. Eq.*

nition the requirement that the "municipal body" be a corpora-
tion. This is made certain when reference is had to the ninth
section of the present statute, from which it is perfectly apparent
that the legislature did in fact intend that the public agency
making the contract need not be a corporation—for the legisla-
ture there says that the lien claimant, in a suit to enforce his
lien, shall include in the parties to the suit,

"the county, city, town, township commission, public board or other mu-
nicipality with whom the contract was made, and *if the public board or
commission is not a corporation,* then the municipality under which it is
constituted must be made a party defendant."

(A difference will be noted between the first section and the
ninth section—in the first section there appears between the
words "township" and "commission" a comma, followed by the
word "public." This is not an error in publication, for the
original bill, as passed, approved and filed, reads precisely as the
printed pamphlet laws—but it is obviously a mere inadvertence
in the drafting of the bill and I attach no significance to it what-
soever.)

Defendants next argue that, under the doctrine of *noscitur a
sociis,* it must be held that the public boards and public commis-
sions referred to in the act as municipalities, can be deemed to
include only such public boards or public commissions as can be
said to be similar to counties, cities, towns or townships—such,
for instance, would be local boards of education, or county or
city building commissions. This argument, so far as relates
merely to the body of the act, would seem to be completely nega-
tived, by the seventeenth section of the act in question, where it
is provided that "the word 'municipality,' as used in this act,
shall be construed to include *every form of municipality, includ-
ing those specified in the first section of the act."*

But reference must also be had to the title of the act. The
constitutional provision that "every law shall embrace but one
object and that shall be expressed in the title" has the result, in
so far as statutory interpretation is concerned, that "the title of
a statute is not only an indication of the legislative intent, but is
also a limitation upon the enacting part of the law." *Hendrick-*

son v. *Fries, 45 N. J. Law 555* (at *p. 563*). "The enacting part of a statute, however clearly expressed, can have no effect beyond the object expressed in the title." *Dobbins* v. *Northampton, 50 N. J. Law 496* (at *p. 499*). "It is entirely well established that the title forms a limitation upon the enacting clauses, and any construction of the latter that would give them a scope beyond the object expressed in the title is for this reason to be rejected." *Jordan* v. *Moore, 82 N. J. Law 552* (at *p. 554*).

The classification expressed in the title of the act *sub judice* is "cities, towns, townships and other municipalities in this state." There is no actual nomination of public boards, commissions or even of counties. Such of these latter as were intended by the legislature to come within the purview of the statute must come within the meaning of "other municipalities in this state." It is true that to the words last quoted is to be attributed such meaning as they had acquired (at the time of the enactment) in common and legislative usage. *State* v. *Twining, 73 N. J. Law 683*, and cases cited. And it also is true, as has already been pointed out, that the word "municipality" has acquired by loose usage a meaning, *inter alia,* which is sufficiently broad to include within its scope, in some instances at least, such a public or *quasi*-public corporation as the state highway commission (assuming the latter to be a corporation). I say, in some instances, for it is perfectly clear that the word is frequently used in legislation and otherwise in a sense or senses which would exclude the state highway commission from its connotation. The question remains, then, whether in this particular instance it has or has not been so used—for it is to be borne in mind that in this, as in every case of statutory interpretation, our object is to ascertain the actual intent and meaning of the legislature.

In *Gibbs* v. *Northampton, 52 N. J. Law 496*, it is held that where words used in the title of an act have no legal or other fixed meaning, reference may be had to the body of the act to determine the sense in which the words are used in the title. Without criticising this decision, it is sufficient to point out that the proposition that the body of the act, and the purpose of the legislation as thereby disclosed, may be referred to in order to de-

termine the sense in which the legislature used a word of no
fixed meaning in the title, is very far from saying that the legis-
lature may in the body of the act give an express definition of a
certain word which is also used in the title, and that that word
as used in the title is to be construed in accordance with the
definition given in the body of the act.   The requirement in
section 7, paragraph 4 of the constitution is relied on by the citi-
zens of the state, not only for the specific purpose therein ex-
pressed, but also to enable them to ascertain and know the laws
upon any subject without being required to read through the
entire body of legislation in order to be sure that some enactment
has not been made upon the subject in question which is not
properly expressed in the title.   *Cf. Van Riper* v. *Heppenheimer*
and *Griffith* v. *Trenton, infra.*   It would seem to me, therefore,
very unwise to extend the principle laid down in *Gibbs* v. *North-
ampton, supra,* in any degree whatever.

In determining the meaning of the title of a statute, the nat-
ural and ordinary interpretation of the language used is to be
adopted—at least, unless there be sufficient indication to the
contrary.   Mr. Justice Garrison's language, in *Griffith* v. *Tren-
ton, 76 N. J. Law 23* (at *p. 24*), is:   "For, in whatever sense the
title of an act would naturally and generally be taken, that is,
ordinarily the meaning that it should, in a constitutional sense,
be held to express."   (This is approved in *Strait* v. *Wood, 87
N. J. Law 677,* at *p. 678.*)   He cites *Falkner* v. *Dorland, 54
N. J. Law 409,* and *Rader* v. *Union, 39 N. J. Law 509,* in point-
ing out that the constitutional provision requires not only that
the title of the act shall *embrace* the object but also shall *express*
it;   and that in order properly to express the object, the title
must disseminate a correct impression thereof, and proceeds to
reiterate as the correct rule the language of Mr. Justice Dixon in
*Van Riper* v. *Heppenheimer, 17 N. J. L. J. 49:*   "The obvious
purpose of this constitutional requirement (article 4, section 7,
*placitum* 4) is to give information as to the object of the statute
to the legislators and the public, and, consequently, the title
should read as it would probably be understood by non-profes-
sional persons of ordinary intelligence."

CASES IN CHANCERY, 1920. 429

*91 N. J. Eq.*        Curtis & Hill, &c., Co. *v.* State High. Com.

The rule or doctrine of *noscitur a sociis,* or rather of *ejusdem generis,* is a natural and ordinary guide in interpretation, as well as (because thereof) having judicial sanction. Where there are words of general import following an enumeration of words of specific signification, the general words are naturally and ordinarily (that is, unless there be some indication to the contrary) to be understood as limited in their meaning to things . of like kind to the particular ones. See *Endl. Inter. Stats.* § *405; Lew. Suther. Stat. Const. (2d ed.)* § *422.* Under this rule, in *Rex* v. *Wallis, 5 T. R. 375,* the word "places" in a statute dealing with "cities, towns, *corporate* boroughs and other places" was held limited by the preceding words to places of like kind, and hence not to include places which were not incorporated.

The rule has been repeatedly applied in our own courts. In *Craft* v. *Smith, 35 N. J. Law 302,* the statute under consideration dealt with "any tax, assessment or other order or proceeding," and it was held the general words did not include a judgment in a court of law, but were limited in their general character by the preceding specific words.

So, also, in *Livermore* v. *Camden Freeholders, 31 N. J. Law 507; affirming S. C., 29 N. J. Law 245,* the words "other property" in a statute giving a right of action for damage to "any person or persons, his, her or their team, carriage or other property," are held limited by the preceding particularization and not to include real property.

In *Thompson* v. *Trenton Water Power Co., 77 N. J. Law 672,* the contract contained a provision exempting the company from liability to the water consumer for stoppage of water occasioned by "repairs and improvements or by breaks, floods, the drought of summer, *nor for any other cause whatever."* The court of errors and appeals held that these words of general comprehension were limited by the preceding specifications, and that the company was liable for stoppage caused by its permitting the city of Trenton to construct a drain under the company's raceway.

Applying this guide to the phraseology used in the title, we must confine "municipalities" to those of like kind with cities, towns and townships; and in determining what municipalities

are of such like kind we of course bear in mind the purpose of the act, namely, the securing to the persons named the payment for the work and materials furnished by them toward the performance of any work in the municipalities. In my view the word "in" has a force and effect which should by no means be overlooked. Of course it has the connotation also of the word "for;" notwithstanding the unexplained omission of the words "public improvements" which appeared in the title of the prior act, it is clear that only public works, work done *for* these municipalities, are contemplated by the statute, not work done for private individuals in these municipalities. Nevertheless the word used is *"in"* and not *"for,"* and to my mind there is thereby indicated as a characteristic of the municipalities, that they should be in some sense local or geographical subordinate creatures of the state (the "local habitation" as well as "the name"), as distinguished from such agencies as are state-wide in their scope and are created by the state for convenience or efficiency in the performance of state work.

The adoption of this characteristic as a requisite qualification of the municipalities in question would exclude the state highway commission and any other "municipality" which is actually a mere *alter ego* for the state, but would not exclude counties, boroughs, school districts, city or county building commissions, drainage districts or any other municipality which is or acts for a subdivision of the state.

This is not in conflict with Vice-Chancellor Garrison's definition in *Union Stone Co.* v. *Hudson, supra.* He was there dealing with a county, which clearly was a municipality of like kind, and did not have before him the issue herein raised, so that the language of his definition is broader than it would have been had he had this question in contemplation—nevertheless his definition is to be read in conjunction with the sentence immediately preceding it—"The purpose of the legislation was to secure to a certain named class payment for work or materials furnished for public improvements *in* municipalities."

That the state highway commission is an *alter ego* of the state and not a mere subordinate is so clear as to need little discussion. The statute *(P. L. 1917 p. 35 § 1)* creates a state highway

CASES IN CHANCERY, 1920.          431

*91 N. J. Eq.*          Curtis & Hill, &c., Co. *v.* State High. Com.

*department* "to be governed by a board to be known as the state highway commission." The members of the commission are the governor himself, *ex-officio,* and eight members appointed by the governor by and with the advice and consent of the senate. The contracts made by the commission are clearly contracts of the state—they may be made either in the name of the state or of the commission. The funds expended for its work are the funds of the state, and expended through the usual state channels. The work which it is to do is the construction and maintenance of a state highway system, reaching throughout the entire state and for the benefit of all the citizens, not merely in or for the benefit of any particular locality or the citizens thereof. The work done under its contracts by these laborers and materialmen is work done "in the state" and not in any "municipality in the state" notwithstanding that each particular piece of work must necessarily have a *locus* within the geographical limits of one or more municipalities or the territory governed thereby.

In my opinion, the sense in which "other municipalities" as used in this title, "would naturally and generally be taken" or "would probably be understood by non-professional persons of ordinary intelligence," includes municipalities of like kind to those specifically enumerated, subordinate municipalities, but excludes such a "municipality" as the state highway commission.

Nor am I able to perceive any reason why other than this natural interpretation should be adopted. The design of the legislation to favor a certain class of persons in certain cases is not such as to incline a court toward a construction other than the ordinary and natural one; nor can any argument therefor be based upon the history of this legislation. The wording of the title of the present act, in this respect, is precisely the same as that in the title of the prior act. The legislature knew that cases of doubt had arisen under the prior act and might well arise under the present act. The decisions under the prior act, as has been seen, held that municipalities *of like kind* were to be deemed included, but no adjudication went further than that. On the other hand the court of errors and appeals had held in *Van Cleve* v. *Passaic Sewerage Com-*

*mission, 71 N. J. Law 574* (at *p. 579*), that the members of that commission, "though incorporated, are not constituted a municipal body" and that "the work committed to them is of a public, as distinguished from a municipal, character;" and had held in *Hardy* v. *Orange, 61 N. J. Law 620,* that the title of an act respecting employment of certain persons "in the public service of the State of New Jersey" could not be deemed to include employes of municipalities. If, then, it had been the intent of the legislature to make the scope of this lien legislation all-comprehensive it undoubtedly would have used language apt for that purpose.

There is, however, a reason, and an important one, why other than the natural interpretation should *not* be adopted in the case at bar. To extend the meaning of "municipality" in the title and body of this act to include the state highway commission would necessarily make the statute operative to affect the rights, interests and property of the state. That this is so, is clear from a consideration of the nature and characteristics of the state highway commission under the act of 1917, *supra,* and by the application of the same principles which form the basis of the opinion in *Herman & Grace* v. *Essex Freeholders, 71 N. J. Eq. 541.* In that case the plaintiff claimed a lien, under the prior Municipal Lien act, for labor and materials on the Essex county court house, which was being erected not by the board of freeholders but by a building commission specially created by the legislature for that purpose. From an examination of the nature of the building commission as set forth in the act creating it and its relationship to the county, the source of the funds expended by it and the means of enforcing its contracts, Vice-Chancellor Emery concludes that "the whole scope of the act is to make the commission and its members the agents of the county, designated under legislative authority, for erecting buildings on lands of the county, which are to be paid for only out of moneys raised by the sale of bonds of the county," and therefore that the contract between the contractor and the building commission "must be held to be a contract with the county" and within the Municipal Lien act. The same reasoning leads, in the case now before us, to the conclusion that the state high-

way commission is an agent of the state, to construct state highways on lands which may be called state lands as distinguished from lands in any municipality (they are not owned by either state or municipality) and to be paid for only out of the state treasury—hence the contract with the state highway commission is essentially a contract with the state, and not with a municipality, and is not within the statute.

An interpretation which would make the statute operative to affect the state is not to be given legislation unless that purpose be clearly indicated. Mr. Justice Depue, speaking for the court of errors and appeals in *Trustees of Public Schools* v. *Trenton, 30 N. J. Eq. 667* (at *p. 683*), says:

"The common law doctrine is, that where the king has any prerogative, right, title or interest, and the statute is general, he shall not be barred of them by the general words of the act, for the king shall not be bound unless the statute is made by express words to extend to him. *Magdalen College Case, 11 Co. 74; Plowd. 239; Bac. Abr. Stats. (E)*. Independently of any doctrine founded on the notion of prerogative, the same construction ought to prevail, founded upon the legislative intent. Where the government is not *expressly, or by necessary implication*, included, it ought to be *clear*, from the nature of the mischiefs to be reached, or the language used, that the government itself was in contemplation of the legislature, before a court of law would be authorized to put a construction on a statute which would affect its rights."

It is, I take it, essentially the same rule or principle which prevents the state from being sued by its citizens. *Lodor* v. *Baker & Co., 39 N. J. Law 49; American Dock, &c., Co.* v. *Trustees, &c., 32 N. J. Eq. 428* (at *p. 434*). The state may by its legislature, consent to be sued (and in certain cases has done so), but no statutory enactment is to be interpreted as giving such consent unless such an intent clearly appears. The subsequent amendments to the statutes relating to Workmen's compensation and to garnishment, extending their provisions to include the state, are examples of the recognition by the legislature of the clarity and definiteness required for such result.

28

By the ninth section of the statute under consideration, if the state highway commission be not a corporation, the state is required to be made a party defendant in litigation to enforce the lien claims; and by the tenth section this court would be required to make a decree directing the state to make payments. It is no answer to say that no real interests of the state are involved because of the provision in the act that the municipality shall not be required to pay out any greater amount than the sum due from it to the contractor; under the proviso at the end of the first section the state might be drawn into litigating an issue between it and the contractor or the lien claimants as to how much was due the contractor from the state.

There would be no difference if the state highway commission be deemed to be a corporation. The commission being the mere agent of the state, the latter would be the real party in interest and the suit in fact one against the state. This is clearly shown in *American Dock, &c., Co.* v. *School Trustees, supra* (at *pp. 435 et seq.*), holding that the trustees for the support of public schools are mere agents and official representatives of the state, and cannot be sued independently and alone; that a suit against them is a suit against the state and will not lie without legislative authority. See also *Poindexter* v. *Greenhowe, 114 U. S. 270; In re Ayres, 123 U. S. 443,* and *Smith* v. *Reeves, 178 U. S. 436,* as to suits which are deemed suits against the state.

It is clear therefore that the title of the act in question is not to be interpreted as including the state highway commission within the phrase "other municipalities," and hence if the body of the act necessarily includes that commission within its scope, it would to that extent be unconstitutional. If, however, the language of the act itself be susceptible of an interpretation which would avoid the result of unconstitutionality, the legislature is to be deemed to have intended such meaning. *Ross* v. *Essex Freeholders, 69 N. J. Law 291* (at *p. 292*) ; *State* v. *Tachin, 92 N. J. Law 270* (at *p. 274*).

"Public commission and public board" as used in the body of the act do not necessarily include the state highway commission. It not only does no violence to the language or the purpose of the act, to attach to these words, and to the expression

in section 10 "every form of municipality" the limiting qualifi-
cation "of like kind to those specifically mentioned," but on the
contrary such a limitation is a reasonable and natural one to
make in the body of the act equally as in the title.

I conclude therefore that the statute in question does not ex-
tend to contracts made by the state highway commission and
will advise a decree dismissing the bill, with costs.