The receiver of the above named insolvent corporation, conducting an examination into the affairs of that company, issued subpoena duces tecum directed to Cronin, Foley and Wandelt, Incorporated, a corporation of this state (hereinafter called the "Cronin Company"), for the production of certain records of that company relating to insurance policies which had been written by that company as agent for the insolvent company; which subpoena was duly served upon the corporation named therein.
At the return date of the subpoena, Richard F. Wandelt, the treasurer of the Cronin Company, and Edward J. Foley, the vice-president, appeared before the receiver, but failed to bring the records called for by the subpoena; nor were the said records in any other way brought before the receiver at that time. The receiver continued the hearing in order that the said records might be produced before him, but on the adjourned date the two individual officers of the Cronin Company above named appeared before the receiver without the records, but with their counsel, and announced that they would not testify further and that they would not produce the records as directed by the subpoena.
The receiver filed a fully verified petition setting forth the foregoing facts, and obtained an order directing the Cronin Company to show cause why it should not be adjudged in contempt for its failure and refusal to comply with the terms of the said subpoena, and why it should not be punished accordingly or compelled to obey the said subpoena.
Upon the return of this order to show cause, the Cronin Company appeared by its solicitors and counsel, without filing any answer or counter-affidavits, and further admitting orally the facts as set forth in petition, defending the contempt proceeding solely on matter of law, which, by agreement of counsel, was submitted on briefs. *Page 327 
The sole defense to this contempt proceeding is the contention that "the receiver is without jurisdiction to compel the officers of a corporation, of which he is not receiver, to testify or produce records."
Section 71 of the General Corporation act (2 Comp. Stat. p.1647) provides as follows:
"Receiver; power as to examination of witnesses, c. — Such receiver shall have power to send for persons and papers and to examine any persons, including the creditors and claimants, and the president, directors and other officers and agents of the corporation, on oath or affirmation (which oath or affirmation the receiver may administer), respecting its affairs and transactions and its estate, money, goods, chattels, credits, notes, bills and choses in action, real and personal estate and effects of every kind, and also respecting its debts, obligations, contracts and liabilities, and the claims against it; and if any person shall refuse to be sworn or affirmed, or to make answers to such questions as shall be put to him, or refuse to declare the whole truth touching the subject-matter of the said examination, the court of chancery may, on report by the receiver, commit such person to prison, there to remain until he shall submit himself to be examined, and pay all the costs of the proceedings against him. (P.L. 1896 p. 300.)"
The respondent contends that this section does not provide that the officers of a corporation which transacted business with the insolvent corporation may be subject to subpoena or interrogated; and that the statute must be strictly construed.
Counsel on both sides admit that the case is one of novel impression, and that they have not been able to find any precedent or authority in this or any other jurisdiction dealing with the particular question here raised.
Counsel for the respondent argues that under the rule ofejusdem generis, the general word "persons" which might otherwise well be deemed to include corporations as well as natural persons, is limited by the subsequent words of specific characterization, in such wise as to exclude from the operation of this section officers and agents of any corporation other than the insolvent corporation, — citing Curtis Hill, c., Co. v.State Highway Commission, 91 N.J. Eq. 421; 111 Atl. Rep. 16.
Respondent further relies on Apperson v. *Page 328 Mutual Benefit Life Insurance Co., 38 N.J. Law 272, in which the supreme court held that the section of the Practice act which authorized the examination before trial of "any party to an action," did not authorize the examination of the individual officers (who were not individually parties to the action) of a corporation which was a party to the suit.
Respondent's argument seems to be based upon a misconception of the facts in the instant case — upon the mistaken idea that the present contempt proceeding is based on the refusal of the treasurer and vice-president of the Cronin Company to testify before the receiver. Such is not the case. The Cronin Corporation itself, and not its officers, is the respondent in this proceeding, and was also the person named in the subpoena ducestecum; and it is for the failure and refusal of the corporation to obey the direction of that subpoena which is the contempt here sought to be established.
The statute authorizes the receiver "to send for persons and papers" and authorizes him "to examine any persons, including the creditors and claimants, * * * and agents of the corporation." Irrespective of whether or not the statute authorizes the receiver to examine the individual officers or agents of a corporation other than the insolvent corporation, it seems only a rational interpretation of the statute to conclude that the legislature, in clothing the receiver with power to send for persons and papers, intended to and did vest him with authority to require corporate persons as well as natural persons to produce before him papers and records relating to the affairs of the insolvent corporation, — and especially so when such papers and records are in the hands of a corporate person which was an agent of the insolvent corporation. Respondent's argument for strict construction would lead logically to the result that the receiver has power to require the officers of the insolvent corporation to produce before him papers relating to the insolvent corporation's affairs, but has no power to require such officers to produce before him books of account or any other records other than such as would be included strictly in the meaning of the word "papers." *Page 329 
Certainly no such notion has ever prevailed, nor has it apparently ever been raised or suggested by anyone in the course of the thousands and thousands of insolvent corporation administrations which have been carried on in this state during over one hundred years that this statutory provision has been in existence. The section in question was included as section 10 of the statute as passed in 1829; and it may have existed even before that date: no examination has been made as to this.
This fact of the long-continued practical construction and general understanding of bench and bar, while of course not controlling, is not lightly to be disregarded.
The thing which is controlling is the object and purpose of the legislative enactment, and giving to the language thereof the meaning which rationally should be accorded thereto in the light of that purpose. 59 C.J., par. 571, p. 961 et seq. In Hart v.N.J. Central R.R. Co., 9 N.J. Mis. R. 121, 152 Atl. Rep. 864, Judge (now Vice-Chancellor) Egan applied the rule of rational interpretation, and certiorari was denied by the U.S. Supreme Court, N.J. Central R.R. Co. v. Hart, 282 U.S. 905.
The object of section 71 is obviously to provide for a speedy and efficient examination into the affairs of the insolvent corporation, so that its assets and choses in action may be speedily ascertained and realized upon, and its several liabilities determined, to the end that its affairs may be speedily wound up and its assets distributed to those entitled thereto. Clearly, therefore, it belongs in the class of remedial statutes, and should be construed liberally with regard to the accomplishment of the legislative object. 59 C.J., p. 1107, par.657 and cases cited.
Moreover, it is to be observed that to accord to the words "persons" and "papers" their full comprehensive meaning is in no wise departing from a literal meaning of the legislative language. Literally those words mean all persons and all papers, and the subsequent phrase, "including, c.," does not literally in any wise restrict that full meaning. The doctrines of construction by associated words or of ejusdem *Page 330 generis are not fixed rules of construction, but merely guides to the ascertainment of the legislative intent.
In TenEyck v. Runk, 31 N.J. Law 428, and in Tichenor v.Hayes, 41 N.J. Law 193, Chief Justice Beasley, applying the rule of rational interpretation, accorded a full and comprehensive meaning to the word "trespass." Both of these cases were expressly approved in the opinion of Mr. Justice Lloyd, expressing the unanimous determination of the court of errors and appeals in Soden v. Trenton, c., Traction Co.,101 N.J. Law 393, 127 Atl. Rep. 558.
There is, of course, a definite limitation of the scope of the words "persons" and "papers" clearly implied, if not actually expressed, in the subsequent portion of the section: the examination which is authorized is that respecting the affairs, assets and liabilities of the insolvent corporation. But what reasonable ground can be assigned or conceived as a basis for supposing that the legislature in giving to the receiver power to summon before him persons and papers, in order to examine into the affairs, assets and liabilities of the insolvent corporation, intended to exclude, — or had no intention to include, — corporate agents of the insolvent corporation, while expressly including agents who are natural persons? Moreover, since corporate persons can act or testify only through those natural persons who are its officers and agents, no rational ground can be advanced for a determination that the legislature, although using fully comprehensive words, had no intention to include among "persons" those certain persons who were the officers or agents of corporate persons other than the insolvent corporation.
For some reason, — (as to the identity of which it seems not important to investigate or ascertain, on the present issue), — the legislature deemed it wise to make special mention and inclusion of certain persons and classes of persons, but it introduces such mention and specification by the word "including." The natural import and meaning of that word is not to cut down or limit the classification to which it applies, but to amplify it, — to insure that by no mistake or misapprehension shall it be thought that such were not intended to be included. *Page 331 
If the clause commencing with the word "including" be disregarded for the moment, it is quite clear that the statutory authority conferred upon the receiver extends to all persons having knowledge of or concern in the affairs, assets or liabilities of the insolvent corporation. It is also clear that the legislative object was to confer such authority; and that the natural import of the added clause effects no reduction or limitation of the classification to which it refers. This being so, it seems clear that a determination that corporate agents of the insolvent corporation, or the officers and agents of such corporate agents, are not subject to the authority of the receiver under this section, would nullify the clear purport and the adequately expressed intent of the legislature and could only be reached by an interpretation which disregards logic and reason. It would be an interpretation contrary to the spirit of the statute and one leading to an absurd result; and for both those reasons cannot be adopted. In re Merrill, 88 N.J. Eq. 261,102 Atl. Rep. 400.
Similarly, it is not to be supposed or determined that by "papers" is meant only separate sheets or separate instruments or documents. Books are bound collections of papers and, by the rule of reason, are not to be excluded from the statutory jurisdiction.
The statute does not prescribe the method by which the receiver shall or may procure the presence before him of the witnesses and records. The method of subpoena, here used, is not questioned. It is the method which has been commonly used for so many years, and seems clearly to be appropriate and proper. That subpoena was directed to, and duly served upon, the Cronin Corporation; which admittedly was an agent of the insolvent corporation; which is proven and admitted to have disobeyed the mandate of that subpoena; and which is the respondent in the present contempt proceeding.
Under these circumstances an adjudication of criminal contempt against the Cronin Corporation and the imposition of punishment therefor would seem to be clearly justified if the present proceeding were a proceeding in criminal contempt. *Page 332 
The act complained of obviously is an intentional disobedience to the authority of the receiver, who is an officer of this court, and was acting as such in the due and proper course of the administration of his duties in a cause pending in, and under the jurisdiction of, this court. As such it is a contempt of this court, — an unlawful and unwarranted interference with, and obstruction of, the administration of that cause in this court.
That being so, the inherent power of this court in the premises cannot be deemed to be limited, impaired or restricted by the fact that the statutory section contains no provision for punishment for such contempt and contains no provision for the enforcement of civil contempt proceedings by any method other than imprisonment. This court has the inherent power to punish for contempt. In re Merrill, supra. Literally the section contains no provision for any hearing, — literally it authorizes the imprisonment of a recalcitrant witness upon the mere report by the receiver; but obviously a proceeding like the present, — an opportunity to the accused to be heard, — must necessarily be had, and must necessarily have been contemplated; since the contempt is not one committed in the presence of the court itself. If the present proceeding were one of criminal contempt, punishment upon the corporation could be imposed by way of fine.Dep't of Health v. Borough of Fort Lee, 108 N.J. Eq. 139,154 Atl. Rep. 319.
The present proceeding, although the prayer of the petition includes a prayer for punishment, must be deemed civil or remedial, instead of criminal. The petition, order to show cause, and proof of service are all entitled and filed in the original cause, instead of in a separate proceeding. Staley v. SouthJersey Realty Co., 83 N.J. Eq. 300, 90 Atl. Rep. 1042; Dep't ofHealth v. Borough of Fort Lee, supra. No criminal conviction or sentence, therefore, can be herein imposed, as could have been done if criminal proceedings had been instituted against the corporation and/or its officers and directors. The officer and directors acted at their peril in disobeying the subpoena ducestecum, as well as in refusing to testify. Dep't of Health v.Borough of Fort Lee, supra. *Page 333 
Considering it as a remedial proceeding, an order may be entered for the enforcement of obedience to the subpoena. Such order, it would seem, may well take the form of that in the FortLee case, — imposing upon the respondent company a fine of (in this instance) $25.00 per day for each and every day until it shall have obeyed the command of the subpoena duces tecum. This doubtless will prove efficacious to accomplish the enforcement of that command; if it should not, application may be made for such further or other order as may be advisable, such as an order restraining that company from the further exercise of any of its corporate franchises until compliance be made, or an application in criminal contempt against the officers and/or directors of that company.
The order will also direct the payment by the respondent of the costs of this proceeding, including a counsel fee of one hundred and fifty dollars. Cf. Hilton v. Hilton, 89 N.J. Eq. 422,105 Atl. Rep. 65.
The petition in this proceeding is undoubtedly a sufficient "report" by the receiver as to the refusals of the witnesses Foley and Wandelt to testify concerning the affairs of the insolvent corporation, after they had appeared and been sworn; but the order to show cause was not directed to them, although (as has already been noted) the brief of respondent's counsel is solely directed to the defense of this refusal by the two individual witnesses. Unless these witnesses advise the receiver that they are willing to appear and testify, the receiver may have an order to show cause directed to them, — either in this civil contempt proceeding, or in a criminal contempt proceeding, or both. *Page 334