**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5585-15T2

DE SAPIO PROPERTIES #SIX,
INC. and DELAWARE RIVER
TUBING, INC.,

    Plaintiffs-Respondents,

v.

ALEXANDRIA TOWNSHIP
BOARD OF ADJUSTMENT,

    Defendant-Appellant.

_____

        Argued October 2, 2017 — Decided August 28, 2018

        Before Judges Messano and O'Connor.

        On appeal from Superior Court of New Jersey,
        Law Division, Hunterdon County, Docket No.
        L-0016-16.

        Joseph C. Tauriello argued the cause for
        appellant (Mason, Griffin & Pierson, PC,
        attorneys; Joseph C. Tauriello, on the
        brief).

        Gaetano M. DeSapio argued the cause for
        respondent.

PER CURIAM

In this land use matter, defendant Alexandria Township Board of Adjustment (board) appeals from a Law Division judgment that reverses two of its resolutions and finds plaintiffs' proposed use of certain property to be a permitted use. After reviewing the record and applicable legal principles, we affirm.

I

Plaintiff DeSapio Properties #Six, Inc., (property owner) owns a lot in Alexandria Township (township) on which is a commercial building and a large parking lot.  In August 2015, the property owner leased a shop in its building to plaintiff Delaware River Tubing, Inc. (DRT), out of which DRT sells various goods and small watercraft, such as tubes, rafts, kayaks, and canoes.  In addition, DRT rents out such watercraft for use on the Delaware River.  If a customer rents a craft, DRT transports the customer and the craft from DRT's parking lot to a specific location on the river where the craft is launched. After the river trip concludes down the river, the customer and the craft are picked up and transported back to the store.

Around the time DRT opened its shop, plaintiffs sought a permit from the township to enable DRT to use the premises as a retail establishment.  Plaintiffs' application described DRT's business as "a retail establishment that sells retail goods such as T-shirts, hats, water cameras, water shoes and other related

2

river good[s]. We also rent tubes, rafts, kayaks and canoes, and provide a free shuttle service to and from the river, only to those who rent equipment. No other shuttle or bus service is provided under any other circumstances."

The zoning officer denied the application on the ground the proposed use was "commercial recreation," which he concluded was not a permitted use in the zone. In support of his decision, the zoning officer cited township ordinance 115-13A(2). We note the latter ordinance makes no reference to "commercial recreation."

The property owner appealed the zoning officer's determination to the board and sought a "zoning interpretation." The property owner contended the kind of business DRT wanted to conduct was a permitted use in the zone. Among other things, the property owner claimed the proposed use was a retail shop and, thus, a permitted use pursuant to ordinance 115-22E(1). In the alternative, the property owner asserted the use was a service business, a permitted use pursuant to ordinance 115-22E(3). The board conducted a hearing; the relevant evidence was as follows.

DRT's president, Gregory Crance, testified DRT has been in business since 2003 and, in 2015, he decided to move DRT to the township. His description of DRT was essentially consistent

3

with what plaintiffs provided in their application to the zoning officer, although Crance clarified the cost of shuttling customers to and from the river is included in the price of renting any watercraft. He estimated seventy-five percent of DRT's income is derived from renting watercraft and twenty-five percent is from the sale of goods.

Crance noted transporting customers who rent watercraft to and from the river is a service typically provided by outfitters. He claimed that if DRT did not provide such service, DRT would go out of business because customers who rent watercraft usually need a means to transport them to the river. In fact, approximately ninety-five percent of those who rent watercraft from DRT take advantage of its shuttle service.

Crance testified DRT obtained an "exclusive concession agreement" from the New Jersey Department of Environmental Protection (DEP). This agreement granted DRT permission to use two locations on the river to drop off and pick up customers and watercraft. Crance explained an agreement of this kind with the DEP is required for any outfitter to gain access to the river for its customers to launch and remove watercraft. A business may not use an access point along the river that has been granted to another business by the DEP through a concession agreement.

4

Crance pointed out DRT's buses travel only a "quarter . . . maybe a half a mile" through the township when DRT transports customers either to or from the river.  Immediately adjacent to the property where DRT is located is a lumber business, where construction vehicles and tractor-trailers enter and exit DRT's adjoining parking lot throughout the day.  Also adjacent to DRT's parking lot is a fuel oil company where tractor-trailers pull into the company's driveway, but Crance did not indicate how frequently they did so.

The relevant testimony of plaintiffs' expert planner, Elizabeth C. McKenzie, was as follows.  The lot on which DRT is located is large, measuring almost thirteen acres, and is in the Industrial Commercial District.  This District permits a range of retail uses, including retail shops and service businesses. One ordinance expressly states the intent of the Industrial Commercial District is to provide sites for "light and heavy industrial uses and more intensive retail commercial activities."

In McKenzie's view, DRT is a retail shop because it sells goods and rents equipment to be used on the river.  According to her, ordinance 115-22E(1) permits retail shops in this District. This ordinance states in pertinent part:

5

E.    Retail and consumer services uses.

          (1) E-1 Retail Shop.  A retail
          shop shall include a store selling
          apparel, . . . [and] sporting
          goods, . . . provided that
          [certain conditions are met.][1]

     McKenzie opined the fact DRT transports certain customers to and from the river is irrelevant to the issue of whether DRT is a permitted use; that is, the busing of customers does not change the nature of DRT's use of the site or disqualify it from being a retail shop.  She observed it is not unusual for sporting goods stores to facilitate participation in those activities that will lead to the sale of their goods or the rental of their equipment.  Many stores endeavor to enhance business by providing transportation to locations where certain recreational activities take place, likening DRT to ski shops that arrange for transportation to ski areas.

     David Banisch, the board's planner, also testified.  In his opinion, the proposed use is "a concession with an Omnibus license or registration for transportation."  He reasoned that, because seventy-five percent of DRT's business is renting out equipment for use on the river, then seventy-five percent of the business is a "concession with a license to use a bus."

_____

[1]  The conditions to which the ordinance refers are not in issue and for the sake of brevity are not set forth here.

A-5585-15T2

Further, in his view, if a use is not specifically identified in an ordinance as a permitted use, then the use is prohibited. Because DRT is engaging in a use that is not identified as a permitted use in any ordinance then, according to him, such use is prohibited. Finding DRT's use of the property was not permitted, Banisch determined the zoning officer did not err when he denied plaintiffs a zoning permit.

The board issued two resolutions. One resolution responded to the property owner's request for an interpretation of the applicable zoning ordinances. In that resolution, the board found

> the retail component of the operation was a small part of the operation in that the majority of the operation consisted of patron parking on site, rental of equipment, transportation of patrons to and from the river and the operation of the concession license granted by the State of New Jersey. As such the Board finds that the use of the property did not meet the definition in subsection E1 of the Ordinance[,] which allows a "retail shop."

In its other resolution, the Board found the zoning officer's denial of the permit proper because the proposed use is not permitted by any ordinance and, thus, such use is prohibited.

Plaintiffs filed a complaint in lieu of prerogative writs challenging the board's resolutions. The trial court reversed

7

the board, concluding the resolutions were unsupported by law. Essentially, the trial court determined the term "retail" as used in ordinance 115-22E(1) included both the renting and selling of goods.  The sole authority upon which the trial court based its decision was a provision in the Sales and Use Tax Act (Act), N.J.S.A. 54:32B-1 to -29.  Specifically, the trial court determined that because the term "retail sale" as defined by the Act includes any "sale, lease, or rental," see N.J.S.A. 54:32B-2(e), then the term "retail" as used in the subject ordinance must also mean the lease or rental of goods.

While the matter was pending before the trial court, the board granted the property owner a use variance, see N.J.S.A. 40:55D-70(d)(1).  This variance permits DRT to use a portion of the site for parking and to transport its customers and watercraft to and from the river.  The use variance is subject to various conditions, none of which needs to be addressed here.

Notwithstanding the fact it granted a use variance, the board maintains the trial court's determination is erroneous and must be reversed.  Accordingly, the board appeals from the trial court's judgment.

II

On appeal, the board contends the trial court erred because it: (1) reviewed the matter de novo, and (2) disregarded

8

evidence DRT's predominant use of the site was not to sell goods but to rent equipment, provide customers long-term parking while they engaged in off-site activities, transport customers to and from the river, and operate a concession license. The board also requests we find the use variance it granted to plaintiffs was appropriate, and that a site plan is necessary, even if the use is permitted.

We decline to address whether the use variance is appropriate and if a site plan is necessary, because those issues are not before us. The board's notice of appeal reveals it appeals from only the trial court's judgment. An appeal is limited to those judgments or orders designated in the notice of appeal. See Pressler & Verniero, Current N.J. Court Rules, cmt. 6.1 on R. 2:5-1 (2018); see also Campagna ex rel. Greco v. Am. Cyanamid Co., 337 N.J. Super. 530, 550 (App. Div. 2001) (refusing to consider a challenge to an order not listed in the notice of appeal).

We turn to the standard of review. When reviewing the decision of a trial court that has reviewed a decision of a board of adjustment, we are bound by the same standards as was the trial court. Fred McDowell, Inc. v. Bd. of Adjustment of Township of Wall, 334 N.J. Super. 201, 212 (App. Div. 2000). Thus, we determine whether the "board decision is supported by

the record and is not so arbitrary, capricious, or unreasonable as to amount to an abuse of discretion." New Brunswick Cellular Tel. Co. v. S. Plainfield Bd. of Adjustment, 160 N.J. 1, 14 (1999) (citation omitted).

However, we review de novo a board's conclusions of law. Wyzykowski v. Rizas, 132 N.J. 509, 518 (1993). Consequently, we exercise plenary review of a board's interpretation of its ordinances. Ibid.; see also Adams v. Delmonte, 309 N.J. Super. 572, 583 (App. Div. 1998) (considering de novo whether a particular service business "qualifie[d] as a home occupation under the ordinance").

Here, there is no question the trial court applied the appropriate standard of review. No further discussion on this point is warranted. See R. 2:11-3(e)(1)(E). The next question is whether the trial court erred when it found DRT is a retail shop and, thus, DRT's use of the site is permitted under ordinance 115-22E(1).

As previously noted, ordinance 115-22E(1) states in pertinent part:

> E.    Retail and consumer services uses.
>
> (1) E-1 Retail Shop.  A retail
> shop shall include a store selling
> apparel, . . . [and] sporting
> goods . . . .

10

The board does not dispute DRT sells apparel and sporting goods, but it does maintain DRT's principal use[2] of the site does not include selling goods and, therefore, DRT is not a retail shop pursuant to ordinance 115-22E(1). Rather, the board contends DRT's principal use of the property is to rent equipment, permit customers to use its parking lot while they use DRT's equipment, transport customers and crafts to the river and back, and make use of its concessions. Therefore, it is the board's position the principal use of the property is not a permitted one under ordinance 115-22E(1).

As stated, the trial court determined DRT is a retail shop, making it a permitted use pursuant to this ordinance. However, the trial court's conclusion DRT is a retail shop was based solely upon the definition of "retail sale" in the Sales and Use Tax Act, see N.J.S.A. 54:32B-2(e). That definition is unavailing, because it is to be used only to define "retail sale" as that term is used in the Act. Therefore, based upon the trial court's rationale, DRT cannot be deemed a retail shop under the subject ordinance.

---

[2] Ordinance 115-4 defines "use" as the "specific purpose for which land or a building . . . thereon is designed, arranged or intended, or for which it may be occupied or maintained." It defines a principal use as "[a] main use; a use which is not incidental or subordinate to another use on the same lot."

11

However, as advocated by the property owner when before the board, ordinance 115-22E(3), which pertains to businesses which provide services, DRT's particular use of the subject site is permitted. That ordinance states in pertinent part:

> E-3 Service Business. A service business shall include such uses as a barber, beautician, laundry and dry cleaning (whether or not coin operated), shoe repair, tailor, photographer, newspaper, printer and travel agency, provided that [certain conditions are met.][3]

Before proceeding further, we note the board interprets the term "shall include" in an ordinance as one of limitation. Thus, we expect the board would interpret ordinance 115-22E(3) to mean that only those kinds of businesses specifically listed in the ordinance are services business.

It has long been settled the term "shall include" as used in this context is not intended to be exclusive or to have a restrictive meaning. See Levitt & Sons, Inc. v. Division Against Discrimination, 31 N.J. 514, 526 (1960) (holding the words "shall include" means the examples listed in a statute are merely "illustrations of the meaning of the phrase being considered, rather than an exhaustive enumeration."); Snegon v. Consol. Indem. & Ins. Co., 117 N.J. Eq. 325, 330 (Ch. 1934)

---

[3] The conditions to which the ordinance refers are not in issue and are not set forth here.

12

(holding the use of the words "shall include" is not to limit but amplify the classification to which it applies).  Therefore, ordinance 115-22E(3) does not confine the definition of service businesses to only those listed in it.

The term "service business" is not defined in the ordinance that provides the definition of various terms used in the township's zoning ordinances, see ordinance 115-4, and there is no evidence what the township intended by this term when it drafted and adopted ordinance 115-22E(3).  We therefore resort to the dictionary to ascertain the meaning of this term.  See Macysyn v. Hensler, 329 N.J. Super. 476, 485 (App. Div. 2000).

Research discloses only one dictionary defines "service business."  That definition informs that a service business is "[a] commercial enterprise that provides work performed in an expert manner by an individual or team for the benefit of its customers.  The typical service business provides intangible products, such as accounting, banking, consulting, cleaning, landscaping, education, insurance, treatment, and transportation services."  Service Business, http://www.businessdictionary.com/ definition/service-business.html (last visited August 21) (emphasis supplied).

The word "business" is clear; resort to reference resources to understand such term is unnecessary.  The word "service" is

less clear.  The Cambridge English Dictionary defines "service" as "a business that provides something for people but does not produce goods[.]"  Service, <u>Cambridge English Dictionary</u>, https://dictionary.cambridge.org/us/dictionary/english/service (last visited August 21, 2018).  The Collins-English Dictionary defines "services" as "activities such as tourism, banking, and selling things which are part of a country's economy, but are not concerned with producing or manufacturing goods."  Services, <u>Collins Dictionary</u>, https://www.collinsdictionary.com/us/dictionary/english/service (last visited August 21, 2018).

Here, as the board found, the retail component of DRT's operation is only a small part of its operation, as DRT is predominantly in business to provide services.  Those services include renting out watercraft and transporting customers to and from the Delaware River, and, while customers avail themselves of these services, customers are permitted to park their vehicles in DRT's parking lot.  Because DRT's principal use is to provide services, such use is a permitted one pursuant to ordinance 115-22E(3).

Although we disagree with the trial court's conclusion that DRT's use of the premises is a permitted one on the ground expressed by that court, we are satisfied DRT's use of the

14

premises is permitted pursuant to ordinance 115-22E(3), and affirm the judgment under review. "[A]n order or judgment will be affirmed on appeal if it is correct, even though the judge gave the wrong reasons for it." Ellison v. Evergreen Cemetery, 266 N.J. Super. 74, 78 (App. Div. 1993) (citing Isko v. Planning Bd., 51 N.J. 162, 175 (1968)).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

15

A-5585-15T2