THE STATE, THE MAYOR AND ALDERMEN OF JERSEY CITY, PROSECUTORS, v. THE MONTCLAIR RAILWAY COMPANY.

1. Jersey City is in possession of some thirty acres of land, which has been acquired and is now held by said city for the purpose of constructing a reservoir, and using the same in connection with the waterworks of said city, for the supply of water to said city. To give them full possession and enjoyment, the legislature authorized them to shut up or vacate public streets upon the said tract, and thus recognized their absolute ownership of the property for the purposes aforesaid. The city is now engaged in constructing said reservoir, and has expended large sums of money in the operation.

2. In the year 1867, and after the city had obtained title to said property, the defendants were incorporated, with power to locate and build a railroad from Montclair to the Hudson river. The company now design to locate and construct their road, in part, through the property now held by the prosecutors for the purpose of a reservoir, and to condemn a strip of land of six hundred feet in length, and one hundred feet in depth, which would sensibly diminish the capacity of the said reservoir. The case being brought before this court, it was *Held*—

1. That, under the ordinary powers conferred on the railroad company by their charter, they had not the power given them to condemn and take the reservoir property for the purpose of building a road through the same.

2. It is settled in our state, that a railroad company may, if it be necessary for the purpose of the franchise, construct their road across the track of another company's road—making compensation; but the doctrine has not yet been applied, in this state, to the taking of a highway longitudinally by a railroad company.

On *certiorari* to remove proceedings of commissioners, &c.

Argued at November Term, 1871, before Justices BEDLE, DALRIMPLE, and SCUDDER.

For prosecutors, *J. Dixon, Jr.*

For the company, *Joseph C. Potts.*

The opinion of the court was delivered by

BEDLE, J.  This writ raises the question of the right of the Montclair Railway Company to condemn a strip of land six hundred feet in length and one hundred feet in width, through a tract held by Jersey City, and now being fitted up for use as a reservoir, in connection with the water works of that city.  The appointment of commissioners was made by a justice of this court, and a *certiorari* thereupon allowed by him.  The reservoir property is upon Bergen Hill, in Hudson county, and included about twenty acres when the company located the route of the road.  Since then, some eight or ten acres have been added to it.  The railway company was incorporated March 18th, 1867, with power to build a railway from Montclair, in the county of Essex, to the Hudson river at the Pavonia ferry, or at the Hoboken ferry, or between the said ferries.  The route through the property in question was located by the company, June 4th, 1868.  The city, it is conceded, obtained the title to the tract of which the strip is a part, before the incorporation of the company.  Whether the same had been acquired by purchase or condemnation does not distinctly appear.  It makes no difference which, as the water commissioners had full legislative authority to acquire it in either way, in the name of the city, and to hold it for a reservoir.  On March 15th, 1866, an act was passed, (*Laws* 1866, *p.* 476,) which, after reciting that the water commissioners had taken and acquired this tract for the purpose of making a reservoir thereon, and that streets had been laid out and dedicated to public use across it, and stating that the said reservoir could not be built without closing up the said streets, vacated such streets within the boundaries of said tract, and authorized the said commissioners to use the land in the construction of a reservoir in the same manner as if no such streets had ever been laid out or dedicated across the same.  No work was done towards the construction of the reservoir until the spring of 1871.  Since then, it has been proceeded with at great expense, as the demands of the city require its speedy completion.  When the company was in-

corporated, it was actually held in the corporate name of the city for the purposes of a reservoir, and the legislature, by the act of 1866, had so recognized it. In this condition of things the location of the route was made through it. It will thus be seen that the property was then held by a public—a municipal—corporation, for a highly important public use, and distinctly recognized by legislative action. The termini of the whole route are, Montclair on one end, and the Hudson river, at ether of the ferries named, or between them, at the other end. The natural course of the road would be through the Bergen rigde of hills, and it is proposed by the company to make a cut of about forty-five feet deep through the reservoir property. That would completely sever it, and create the necessity for very heavy and thick retaining walls and embankments, which, for security, would require at least fifty feet on each side of the strip. That, in addition to the one hundred feet, the width of the strip, would take from the capacity of the reservoir about two hundred feet, at least, in width, all the way across it. The charter of the company is in the usual general terms, both as to the location of the road and the power to take lands. Can this company, then, take the strip in question as proposed? The mere statement of the proposition would seem to convey the answer in the negative.

A railroad corporation, with only general powers to locate its road and take land for it, may cross a public highway, upon the ground that it is presumed the legislature so intended, from the necessity of things. *Starr* v. *Camden and Atlantic R. R. Co.*, 4 *Zab.* 592. The power is derived by necessary implication from the scope of the franchises granted, and in order to give them effect. This, of course, is subject to the duty of making compensation to private owners, as is now well settled in this state. In New Jersey this doctrine has not yet been applied to the taking of a highway longitudinally, by a railroad company. No case has occurred in the courts where such a necessity has arisen. It may, however, be conceded that it may arise where, in applying the route to

the territory through which it is to pass, it could be located in no other practical way than upon a highway, but that it should not be a mere question of expediency, or of comparative expense, but of practical necessity, in order to give effect to the franchises granted. The presumption is in favor of the public and against the necessity of taking the highway longitudinally by a private corporation, although for a public purpose, such as a railroad. To authorize it, the legislature should either so indicate it in the language of the act, by express words or necessary construction, or it should result as a necessity, in order to accomplish the object intended in the grant of the franchises. As, for instance, the route of a railroad may be so particularly defined that in locating it, a highway must inevitably be occupied, or the route may be more general, and the territory through which it is to run may be such that there is no other practicable way by which it could be located than upon a highway. Necessary implication may result from the use of words or from the application of the grant to the locality contemplated; but in either case, the deduction must be clear that the legislature actually intended it, or that the grant cannot, practically, be carried out without presuming it. Any rule short of that leaves the right to take highways longitudinally as a mere question of expediency for the courts, to be judged of alone by the comparative desirableness and expensiveness of different routes. The principle stated as to highways generally, is declared by Chief Justice Shaw in *Springfield* v. *Connecticut R. R. Co.*, 4 *Cush.* 63, although I think his application of it, in that case, was too liberal, and is fairly liable to the criticism of Chancellor Williamson in *M. & E. R. R. Co.* v. *Newark*, 2 *Stockt.* 361. This latter case sustains the rule as herein laid down. But this reservoir properly stands even on a higher plane than an ordinary highway, and the presumption is stronger that the legislature had no intention to have it touched. In a highway the public have only an easement. In this they own the fee, and it is devoted to a most important public use. It is like the court house grounds of a county; and to take

them would require an express indication of the legislature, or an implication equally conclusive. But by applying the rule in relation to highways in its most liberal sense, the company cannot take the strip in question. There is nothing in the nature of the locality through which the road must, in some way, pass, or in the description of the route, that makes it a necessity to invade the reservoir property. This may be the better route, but it is not the only practical way. The evidence clearly warrants this conclusion.

Whether the city has any power, without further legislation, to divert any part of the property from its recognized public use and convey it to the company, need not now be determined.

The appointment of commissioners must be set aside.

To avoid any misunderstanding, it may be stated that this opinion is not intended to affect the principle in *M. & E. R. R. Co.* v. *Central R. R. Co.*, 2 *Vroom* 206, concerning the condemnation of railroad property where the franchises are not interfered with.

CITED *in State, M. & E. R. R. Co., pros.*, v. *Hudson Tunnel Co.*, 9 *Vr.* 556; *N. J. Southern R. R. Co.* v. *Comm'rs, &c.*, 10 *Vr.* 33.