The complainant seeks to enjoin the defendant from interfering with the building and construction of State Highway Route No. 25 of the state highway system through the city of Elizabeth, and from interfering with that commission's entry upon certain lands of the city which the commission desires to take for the purposes of said highway. The matter comes before me on the return of an order to show cause issued by the chancellor.
State Highway Route No. 25 extends from Jersey City to Camden by way of Elizabeth, but the State Highway act (P.L. 1927ch. 319 p. 712) does not specify the course of the route through the city, that matter being left to the discretion of the commission itself. The commission has chosen what is known as the "Spring Street Route," and this route is opposed by the city. For the purpose of constructing *Page 223 
this route through the city of Elizabeth on the course selected, it is necessary for the state to acquire certain lands located in and owned in fee by the city, consisting of two plots designated as Plots "A" and "B," and consisting of twenty thousand square feet and eleven thousand seven hundred and fifty-five square feet, respectively. The State Highway Commission has offered the city the sum of $20,400 for said lands, which offer has been refused. Upon such refusal, John J. Stanley, supervisor of maintenance in the employ of the State Highway Commission, and by direction of that commission, entered upon the lands in question with a force of men and took possession thereof and began the work of construction of said highway at that point, whereupon he was arrested by a city policeman on the charge of destroying city property, and the work so begun was stopped under threat of further arrests. This bill was immediately thereafter filed.
It is claimed by the defendant that no formal offer or tender of compensation was made by the commission; but that fact, if it be a fact, is immaterial in view of the case of Goodavage v.State Highway Commission, 96 N.J. Eq. 424. It is quite apparent, however, that further negotiations with the city would have been useless and that the commission, under the circumstances, was justified in concluding that an agreement with the city was impossible.
The only question involved here is whether or not lands of a municipal corporation used for public purposes are subject to condemnation by the State Highway Commission for state highway purposes to the same extent as lands owned by private individuals or corporations. The question is apparently an open one in this state. The only reported case in which the question has been noticed, and to which my attention has been called, is that ofEverett W. Cox Co. v. State Highway Commission, 4 N.J. Mis. R.510, and there the supreme court refused to pass on the question as it had not been raised by the municipality concerned.
The State Highway Commission undoubtedly has power to take private property for public use. The general power to condemn was given in the original State Highway act. P.L. 1917 ch. 15. See, also, section 3 (e), P.L. 1927 ch. *Page 224 319. And such property may be taken and occupied by the commission without first instituting proceedings to condemn (Haycock v. Jannarone, 99 N.J. Law 183), and even before any negotiations for the purchase or acquisition of such lands are had with the owner. Goodavage v. State Highway Commission,supra. It is the duty of the commission to condemn in order that proper compensation may be fixed and paid to the owner, but this duty is a ministerial one for the performance of which mandamus
will lie at the suit of the property owner. Haycock v.Jannarone and Goodavage v. State Highway Commission, supra.
On behalf of the defendant it is contended that the lands owned by a municipality and already appropriated by it to public use cannot be taken by the state under its power of eminent domain for some other public use unless the authority therefor appears by express terms in legislative enactment or by necessary implication; and that such power is not expressly conferred upon the State Highway Commission by the act creating it; nor is it necessarily implied.
As a general rule of law "it is well established that property previously devoted to a public use may, by the exercise of the power of eminent domain, be taken for a different public use whenever the interests of the public require." 37 L.R.A.
(N.S.) 101, note.
"The chief difficulty arises when authority to condemn property for any purpose is given in general terms, as is usually the case in these latter years. In such case the presumption is against the right to take property which is already devoted to public use. This presumption may be overcome by showing a reasonable necessity for the property desired as compared with its necessity and importance to the use to which it is already devoted. * * * As to the degree of necessity which must exist * * * the better opinion is that it must be a reasonable one. Whether any general rule can be laid down as to what will constitute a reasonable necessity, may be doubted. But we should say that there was a reasonable necessity for the taking where the public interests would be better subserved thereby, or where the advantages to the condemnor will largely exceed the disadvantages to the condemnee." Lew. Em. Dom. 794, § 440.
In this connection, it should be borne in mind that the state highway system is "for the benefit of all the citizens, *Page 225 
not merely in or for the benefit of any particular locality or the citizens thereof." Curtis Hall Gravel and Sand Co. v.State Highway Commission, 91 N.J. Eq. 421.
In this state the right to take property already devoted to public use must be given in express terms or by necessary implication. New Jersey Southern Railroad Co. v. Long Branch,39 N.J. Law 28; State v. Montclair Railroad Co.,35 N.J. Law 328; Van Reipen v. Jersey City, 58 N.J. Law 262; PlainfieldWater Co. v. Plainfield, 84 N.J. Law 634. But there is no doubt that the right may be granted by the state and that fact is not here questioned; but the state cannot grant what it has not, and to concede the power to confer the right on its creatures is to acknowledge the right in the state itself. But the power of eminent domain lies dormant in the state until legislative action is had. Cooley Const. Lim. (6th ed.) 648.
"In the constituted government of this state, the right of exercising it has been confided to the legislature, restricted by only two conditions; one, that compensation shall be made to the owner of property taken; the other, that the use for which property may be taken shall be a public use. In other respects it is without limit. Whether the purpose to be subserved be necessary or wise, is for the legislature alone." National DocksRailroad Co. v. Central Railroad Co., 32 N.J. Eq. 755, 763.
Prior to 1844 there was no constitutional provision requiring the payment of damages to a land owner for land taken for public highways. Haycock v. Jannarone, supra. But the power of eminent domain was always inherent in the state; it was not conferred, but limited by the constitution. 3 Dill. Mun. Corp.
(5th ed.) § 1024. It is an inseparable attribute of sovereignty but it may be delegated to a state agency.
The defendant is a municipal corporation and such corporations are simply governmental agencies of the state adopted for reasons of convenience in order to deal with local affairs and subject to legislative control without limitation save such as the constitution imposes. Van Cleve v. Passaic Valley SewerageCommissioners, 71 N.J. Law 183 (at p. 224); Milburn v.South Orange, 55 N.J. Law 254-263; Hunter v. *Page 226 Pittsburgh, 207 U.S. 161, 179; 52 L.Ed. 151, 159; City ofTrenton v. New Jersey, 262 U.S. 186; 67 L.Ed. 927.
"Municipalities are the creatures of the state and the powers given to them are always subject to be abridged or repealed by the sovereign who conferred them." New Jersey Bridge and TunnelCommission v. Jersey City, 93 N.J. Eq. 550. The state is the supreme and sovereign power. "It acknowledges no superior upon earth." Ibid. All rights and powers of the municipality are derived from the state and all its property is held subject to the inherent right of the state to appropriate it to public use whenever the public good may require it. The state gave and the state may take away.
Property may be held by a municipal corporation either in its governmental or in its private or proprietary capacity. If the former, it is held as an agency of the state, and property so held may be reclaimed by the state at any time without compensation. 10 R.C.L. tit. "Eminent Domain" § 68; JerseyCity v. Jersey City and Bergen Railway Co., 20 N.J. Eq. 360;Milburn v. South Orange, supra; Newark v. Watson,56 N.J. Law 667; City of Trenton v. State of New Jersey, supra; Hunter v.Pittsburgh, supra. But in the latter, the municipality stands upon the same footing as any other property owner (20 Corp. Jur.620), and such property may be appropriated to public uses the same as any other privately-owned property upon just compensation being made therefor. It does not appear from the papers filed herein in which capacity the defendant claims to hold the property sought to be taken, the answering affidavit stating merely that the lands are used "by the city as a corporation yard by the street department;" but as the State Highway Commission has offered to pay the defendant for the property it is to be assumed that it is held by the municipality in its private or proprietary capacity. The distinction, however, is not universally recognized (Hunter v. Pittsburgh, supra) and is of little moment so far as the state is concerned, as either class of property may be taken by the state in the exercise of its sovereign powers. The point is that as to this property the municipality stands in the same position as any private *Page 227 
individual or corporation; and, except for the question of present public user, nothing more is required of the complainant to accomplish the taking than if the property were privately owned.
As to the objection that the property in question is already devoted to a public use, if this be a fact, it is not controlling. While undoubtedly the doctrine of prior public use is applicable as between corporations having equal right of eminent domain under grant from the state, it has no application as between the state and one of its political subdivisions. This is because the state is the sovereign power. But aside from this fact, I am convinced that the State Highway act confers complete power on the commission to acquire the lands here involved by the method proposed.
Specific power of condemnation was given to the State Highway Commission in the original State Highway act, supra, and that act further provides that "the work of the department shall be performed under the State Highway Commission, which shall have all powers necessary therefor without recital in detail." P.L.1917 ch. 15 p. 38 § 10. The more recent powers of the State Highway Commission in connection with the appropriation of lands for public use are recited in P.L. 1927 ch. 319 § 3 (e), as follows:
"To acquire any lands or rights therein by gift, devise, purchase or by condemnation, according to the procedure as contained in" the Eminent Domain act. * * * "The State Highway Commission shall have the right and power to enter upon and take property in advance of making compensation therefor in any case where it cannot acquire land or other property by agreement with the owner, whether by reason of disagreement as to the price, or the legal incapacity or absence of the owner, or his inability to convey valid title, or by reason of any other cause. * * * To do and perform whatever may be necessary or desirable to effectuate the object and purposes of this act. * * * These powers are to be liberally construed."
In considering the powers of the State Highway Commission as conferred by the above-quoted language, it must be borne in mind that the State Highway Commission "is an alter ego of the state itself." Curtis Hill Gravel and Sand Co. v. State HighwayCommission, supra. It is, for the purposes *Page 228 
of this suit, the state itself, and "not a mere subordinate."Ibid. And if the positions of complainant and defendant were reversed this suit could not be maintained without the consent of the state. Therefore, when the State of New Jersey, through its legislature, says that the State Highway Commission shall have power "to do and perform whatever may be necessary or desirable to effectuate the object and purposes" of the act of its creation, it is but another way of saying "You are our agent and representative; and we invest you with all of our powers in furtherance of the objects and purposes for which you are created, and this declaration of authority shall be liberally construed." What more could be asked? By what language could broader powers be given? Under these terms the State Highway Commission might well say, in the words of a famous French monarch, "L'Etat, c'est moi." The State Highway Commission is not a separate and distinct entity upon which the power of eminent domain has been conferred, but it is to all intents and purposes, and within the scope of its authority, the state itself; and its powers within the sphere of its activities are limited only by the powers of the state.
"It is immaterial whether the grant of power is contained in the express words of the statute or arise by necessary implication. Its force and value, when established, are no more potent in the one case than in the other." Van Reipen v.Jersey City, supra.
It is suggested that a comparison of the language of section 3 (e) of the State Highway act, above recited, and that of the Port Authority act (P.L. 1924 ch. 149 § 5) will indicate that when the legislature intends to confer authority to appropriate property already devoted to public use to a new public use, it will say so in unmistakable terms. The language of the latter act does undoubtedly confer such power in express terms; but it does not follow that less explicit language might not have conferred the same power. Delaware River Transportation Co. v. Trenton,85 N.J. Law 479; affirmed, 86 N.J. Law 680. My study of the various state highway acts and the most recent revision leads me to the conclusion that the legislature intended to confer complete power and the widest *Page 229 
discretion upon the commission, in order that the construction of the state highway system might be facilitated in the greatest degree.
Absolute discretionary power in the determination of the course of a state highway route through a city resulting in the taking of city property already devoted to a public use, may be a dangerous power in the hands of an arbitrary state agency; but that is a matter for consideration by the legislature and not by the courts.
In New Jersey Interstate Bridge and Tunnel Commission v.Jersey City, supra, the chancellor said:
"This great work of constructing tunnels under the Hudson river is the work of the state itself, for the state, whereever it prosecutes any great governmental purpose either in its own name or by and in the name of its appropriate agent, is the actor in carrying the particular purposes into execution."
And further:
"As already seen, this tunnel project is an extension of the state highway system and the control of highways by municipalities is always subject to paramount control by the state itself."
For the purpose of this decision the port authority stands in the same position as the bridges and tunnels commission in the case last cited.
It is not to be presumed that the legislature would confer less authority upon the State Highway Commission, charged, as it is, with the duty of laying out and completing the main project, the state highway system, than it would confer upon an agency charged merely with the duty of building and completing an extension of that system.
I will advise an order restraining the defendant in accordance with the prayer of the bill. *Page 230