No. 41,915

State of Kansas, ex rel. Robert J. Foster, County Attorney of Wyandotte County, *Appellant,* v. City of Kansas City, a Municipal Corporation, et al., *Appellees.*

(356 P. 2d 859)

Opinion filed November 12, 1960.

*James J. Lysaught,* of Kansas City, argued the cause, and *Robert J. Foster,* county attorney, was with him on the briefs for the appellant; *Joseph H. McDowell* and *Thomas C. Lysaught,* for Wyandotte township and *Conrad Miller,* for Shawnee township, all of Kansas City, were on the briefs as *amici curiae.*

*Harold H. Harding,* of Kansas City, argued the cause, and *C. W. Brenneisen, Jr., Donald H. Corson, Jr., Joseph A. Bukaty* and *C. W. Lowder,* all of Kansas City, were with him on the briefs for the appellees.

The opinion of the court was delivered by

JACKSON, J.: This is an action in quo warranto. The case was heard on the petition and answer of the city, plus certain stipulations. The state, as represented by the county attorney, claims under the agreed facts that Kansas City has no power to condemn by eminent domain the certain described part of a water system now located within the city limits of Kansas City, but belonging to Quindaro Township. The trial court, after full consideration of the questions submitted to it, held that the city had sufficient power to condemn the water system, and entered its judgment so holding. The state has appealed.

A statement of the facts sufficient for an understanding of the questions of law will not require a review of the pleadings as a whole or of the stipulations. It may be noted that the appellee directed the court's attention to a few undisputed facts in its brief, and that the state has objected thereto, to some extent, but has in no way disputed the facts themselves. It must be quite plain that the court may take judicial notice of all undisputed facts surrounding the case, and the manner in which the court's attention is directed to them is usually quite immaterial.

We shall refer to the parties throughout the rest of this opinion as the township, the city, and the state.

Some time in the 1930's, the township constructed a water system for the purpose of furnishing water to the inhabitants of the township. The city has directed us to the fact that the township buys its water from the city in the first place, and we note that the township probably has no authority to acquire water from any place other than the city, see G. S. 1949, 80-1605.

From April, 1956, to August, 1957, the city carried out certain programs of annexation of populous areas from the township involved in this suit and from Wyandotte township and Shawnee township all in Wyandotte county. An area was annexed from the township here involved of some one and one-eighth square miles in size, with 6,000 inhabitants and some 1,250 residential and commercial users of water. The annexation of the area is complete and is unchallenged in any proceeding. We are advised that certain negotiations were had after the annexation in an attempt to obtain a transfer to the city of that part of the township water system which now lies within Kansas City so that the city might use the mains and other facilities to furnish water to its new inhabitants. These negotiations have

failed, and the new inhabitants of the city in the annexed area are continuing to purchase water from the township at a higher rate than charged by the city water department, although they are now charged with city taxes upon their property in the annexed area which are higher than township taxes would be on the same property.

It is agreed that the township has no franchise to sell water within the area of the city, but is simply doing so. It would seem that the board of public utilities of the city is charged with the duty and empowered to furnish water to these inhabitants in question (G. S. 1949, 13-1223).

It is agreed that in March, 1959, procedurally proper steps were taken by the city to condemn by eminent domain all of the water system owned by the township which is now located within the city limits of the city. The county attorney of Wyandotte county immediately filed this action to test the constitutionality of the proposed condemnation.

The sole question between the parties to this action turns upon the nature of the township water system. May the city condemn the township property under statutory authority which speaks of power to condemn *private property* (G. S. 1949, 13-404 and 13-1223)? The state would hold the township property to be as follows:

"Property owned by an 'arm of the state' such as a township and devoted to a public use is public property regardless of its location within this state and is not subject to condemnation as private property."

The state's assertion that the township water system is always to be treated as public property is just a little shaken, it would seem by reading the case of *State v. Shawnee County,* 83 Kan. 199, 110 Pac. 92. In that case Shawnee county had been given authority to construct levies along the south side of the Kansas river partly within and partly without the city of Topeka. The then attorney general questioned the right of the county to act within the city and to place taxes upon city property. This court held the county had ample power to perform the work and said as to taxation:

"The water mains, hydrants and electric-light fixtures of the city are private property, owned by it in its corporate capacity. They have a permanent situs within the drainage district, and constitute "property" and "other property liable to assessment" within the meaning of the act. There is no constitutional or other impediment to the assessment of such property for benefits conferred by an improvement of the kind in question. (2 Page & Jones, Tax. by Assess. § 548.)"  p. 205.

True, the court was not speaking of eminent domain in the above case, but of taxation of one kind of municipal property at the hands of another quasi-municipal body. The state says the use of the term "private property" was not necessary to the decision. We would agree that perhaps it was not. But at least it indicated what the court at that time thought of city owned water systems. Again, we might suggest that the nature of city water systems in another sense is shown by the case of *McGinley v. City of Cherryvale,* 141 Kan. 155 40 P. 2d 377, in which this court declared a city-owned water plant to be a proprietary function of the city and that the city might become liable in tort for negligence caused by the employees thereof. The township would appear to argue that a township water system is of a higher use than that of a city. The court is not impressed with this idea. It is certainly a more normal function for a city to operate a water system than for a township to do so.

There is authority from other jurisdictions which definitely holds that a municipality's proprietary property may be condemned under a general eminent domain statute as private property, e. g., *State Highway Com. v. Elizabeth,* 102 N. J. Eq. 221, 140 A. 335; 20 C. J. sec. 109, p. 620, where it is said:

". . . and property held by a municipality in its proprietary capacity, being on the same footing as private property, may be condemned for a street."

While in no way meaning to depreciate the statement from the case of *State v. Shawnee County,* supra, the case now under consideration presents unusual facts, which pose certain special questions.

In the first place, it must be noticed that when the city annexed that part of the township in which is located the part of the water system proposed to be condemned, that area ceased absolutely to be a part of the township. (*Murphy v. Curtis,* 184 Kan. 291, 336 P. 2d 411.)

It must be too evident for argument that the principal purpose of a township water system is to furnish water to the inhabitants of the township. The residents of the annexed area are no longer inhabitants of the township, and the township has no legal authority to furnish water to such residents unless it has a contract or franchise with the city (G. S. 1949, 80-1605). What now becomes of the argument that the township water system, or that part of it proposed to be condemned, is "devoted to public use"? It would appear that such part of the system is not rightfully so devoted. It

would appear to be an *ultra vires* act, at best. As noted above, the city is the municipality empowered by general law to furnish water to these residents of the area in question.

There is a principle or rule of law as to eminent domain which has often been applied between two public service companies and in some instances municipalities and quasi-municipalities have come under the same principle. The rule may be stated as holding that one public utility may condemn the property of another public utility if the last company is not using its property to serve the public. Many authorities in other jurisdictions will be found cited in 29 C. J. S. 864, sec. 74; 20 C. J. 601, sec. 89; annotation in 12 A. L. R. 1502; and 18 Am. Jur., 720, note 1.

This court has recognized this rule in *Railway Co. v. Railway Co.*, 67 Kan. 569, 70 Pac. 939, 73 Pac. 899. In that case the Orient railway attempted to condemn part of the Santa Fe railway's right of way. The court held in its first opinion that the Santa Fe had not used the property and that it could be condemned. The syllabus, paragraph one, reads as follows:

"One railway corporation may, under the general statutes of eminent domain, condemn for its right of way real estate belonging to another railway corporation not in actual and necessary use for railway purposes."

On rehearing, the court found that the Santa Fe was actually using its right of way, and held it could not be condemned by the other railway, see syllabus of that opinion, page 580 of the report.

Another case decided in 1908, which merits attention is *Metropolitan Water Co. v. Kansas City*, 164 Fed. 738. The case just cited dealt with problems of the city of Kansas City in establishing its municipal water system in the beginning, and in acquiring the property of the public utility company which apparently had been furnishing water to the city. The city had refused to renew the franchise of the company, and had taken the proper steps under a general law to acquire the company's property by eminent domain. At the company's behest the whole matter was removed to the federal district court, where it came before Judge Pollock, who eventually held that the city could maintain the proceeding and the condemnation was carried out in the federal court. It was not contended that the company's property was devoted to a public use and therefore exempt from condemnation for the same use by the city. Perhaps, the company felt unable to urge this because of the fact it had no franchise to sell water in the city. It will be

noticed that the case of *Railway Co. v. Railway Co.*, supra, was cited on another point in the opinion of the *Metropolitan Water Co.* case.

But is the township in the case at bar in any better position than the Metropolitan Water Co. was in that case? The township has no authority from the state without the franchise to sell water in the city. It is selling water apparently at the sufferance of the city. It would appear that the township is in a very similar situation to that of the water company in Judge Pollock's case.

In *City of Norton v. Lowden*, 84 F. 2d 663, the court of appeals of the Tenth Circuit, speaking through Judge McDermott, allowed the city of Norton to take certain property of the Rock Island railroad. The 11th paragraph of the headnote reads:

"Where property owned by public service company is not presently devoted to public use and there is no reasonable probability that it will be so devoted in near future, property may be condemned under statute conferring right of eminent domain in general terms."

We do not believe that it requires any expansion of the rule just quoted to apply it between a city and a township where the township has lost all power to legally continue to serve the public. In such a case, indeed, its property and the water system here involved can be described quite accurately as "private property" under the statement of Mr. Justice Burch in the opinion in *State v. Shawnee County*, supra.

The above is sufficient to answer the question as to the nature of the township water system involved in this case. The decision of the learned trial judge is affirmed.

Some mention has been made of the interest of the bond holders in the part of the water system taken by eminent domain. The township officers are fully capable of seeing that the funds obtained from the sale of the property are applied upon the indebtedness.

The judgment of the district court is affirmed. It is so ordered.