89 N.J. Super. 202 (1965)
214 A.2d 446
STATE OF NEW JERSEY, BY THE STATE HIGHWAY COMMISSIONER, PLAINTIFF,
v.
THE UNION COUNTY PARK COMMISSION, A CORPORATION OF NEW JERSEY; HARTSHORN ESTATE, A DEFUNCT CORPORATION OF NEW JERSEY, DISSOLVED OCTOBER 14, 1946; TOWNSHIP OF SPRINGFIELD IN THE COUNTY OF UNION, A MUNICIPAL CORPORATION OF NEW JERSEY, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided October 28, 1965.
*205 Mr. Philip A. Donnelly, Deputy Attorney General, for the plaintiff (Mr. Arthur J. Sills, Attorney General of New Jersey).
Mr. Frederick C. Kentz, Jr., for defendant Union County Park Commission (Messrs. Kentz, Kentz & Gilson, attorneys).
No appearance for defendants Hartshorn Estate and Township of Springfield.
FELLER, J.S.C.
This case originated by virtue of a complaint filed by the State Highway Commissioner, plaintiff, acting in his capacity as an agent of the State of New Jersey, against the Union County Park Commission et als., defendants, for the condemnation of lands. Defendant Union County Park Commission (hereinafter Park Commission) has filed an answer and first separate defense contesting the authority of the State, acting through its Highway Commissioner, to acquire the lands by reason of N.J.S.A. 27:7-36.
Plaintiff's need for this particular property arose as a result of congressional action designating a National System of Interstate Highways in 1944. Initially, three interstate routes were selected in New Jersey. However, as a result of subsequent congressional action which expanded the Interstate System, more such routes were submitted by the New Jersey Highway Commissioner in 1955 for approval by the Federal Commissioner of Public Roads. One such additional route *206 was then designated as Federal Aid Interstate 102. It was to run from the Pennsylvania-New Jersey State line in the vicinity of Phillipsburg easterly to the New Jersey-New York State line in the Holland Tunnel. Formal approval of the general location of Federal Aid Interstate 102 was transmitted to the State Highway Commissioner from the United States Department of Commerce, Bureau of Public Roads, on September 15, 1955.
After this the Legislature of the State of New Jersey, by L. 1956, c. 153 (N.J.S.A. 27:7A-10), authorized the Commissioner to designate as freeways, in accordance with L. 1945, c. 83, routes in the State approved by the United States Department of Commerce, Bureau of Public Roads, as a part of the Interstate Highway System. The State Highway Commissioner thereupon executed a determination and order that the routes approved by the Bureau of Public Roads "be and are hereby designated Federal Aid Interstate Routes as part of the State Highway System." This determination and order included Federal Aid Interstate 102. Copies were forwarded to the Secretary of State and to the county clerks of the counties affected by the alignments. A copy is on file in the office of the Clerk of Union County in Miscellaneous File No. 1654.
After this, feasibility studies were ordered to be made by the Commissioner to settle alignments for the various interstate routes. Pursuant to U.S. Code, Title 23, public hearings were conducted in areas through which the proposed interstate routes would pass. For the section of Federal Aid Interstate 102, now designated as Interstate and Defense Highway Route 78, public hearings were held. One such hearing, embracing the lands in suit, was held in the Regional High School in Springfield on June 30, 1958, after notices thereof were duly published according to law. Eight men representing the Union County Park Commission attended this hearing.
Defendant Park Commission is a body politic of the County of Union, New Jersey, with the authority vested in it by *207 N.J.S.A. 40:37-33 to locate parks and acquire lands for such parks by purchase, gift, devise or eminent domain. Pursuant to this authority the Park Commission in 1936 acquired by deed the lands involved in this proceeding from the Hartshorn Estate, a now-defunct New Jersey corporation. Since its acquisition this land has been used and held by the Commission exclusively for park purposes.
A little less than four years after the hearing, the Park Commission received a form letter from the State Highway Department advising it that the subject property was needed for highway purposes. The letter also stated that a land negotiator would contact the Park Commission. One-half year later an oral offer by the State Highway Department was communicated to defendant. This offer was for the sum of $161,300 for 16.026 acres of the Hartshorn Tract. Less than six months elapsed between the receipt of this offer and the making of a new offer by plaintiff. On June 12 an offer was made for the sum of $192,300 because of the addition of 2.093 acres not originally mentioned in prior negotiations. In the same letter which communicated this offer it was further mentioned that the negotiator would recommend that an additional 1.170 acres be taken.
After this communication defendant on June 22, 1964 made a formal inspection of the lands in question. At a subsequent meeting on July 20, 1964 it rejected the Highway Department's offer. At this time it was indicated that the negotiations with the Highway Department should, however, be continued.
Defendant furnished the results of its meeting on July 20, 1964 to the Highway Department's negotiator on July 23, 1964. He reported that the negotiations were to be forwarded to the State Highway Department for review.
There was no contact between the parties from July 23, 1964 until May 13, 1965. On the latter date a meeting was arranged between the two bodies for June 7, 1965. After this, defendant took steps to acquire a formal appraisal of the land in question by an expert. It notified plaintiff of this action *208 and informed it that a formal appraisal would not be available until July 1, 1965. The Park Commission also stated that it would be unable to enter into any agreement for the sale of the subject lands until such an appraisal had been obtained and studied.
Upon notification of this delay, plaintiff on June 29, 1965 filed this complaint for the condemnation of lands owned by defendant. The Park Commission filed an answer and a first separate defense which alleged:
"1. Since the Defendant, The Union County Park Commission is established pursuant to N.J.S.A. 40:37-96 et seq., the Plaintiff is without any legal authority to condemn lands of a park commission established thereunder without the consent of the park commission pursuant to N.J.S.A. 27:7-36. The Defendant, The Union County Park Commission has not given its consent to this action.
WHEREFORE, the Defendant, The Union County Park Commission, demands judgment dismissing complaint filed herein together with costs."
It also filed notice of motion for an order dismissing the complaint. Plaintiff, in turn, also filed a notice of motion to strike the answer and first separate defense.
At a meeting of the Park Commission on July 30, 1965 the State offered $265,000 for the parcels in suit plus the remnant parcel remaining in the Park Commission and again asked for a right of entry at this time pending ultimate decision. The Park Commission rejected the offer and denied the right of entry. At the same time defendant offered to accept $350,000. It is plaintiff's contention that the State cannot meet the price and expect participation of federal funds in view of the appraisal obtained by the state.
The parties agree that in the event that plaintiff is barred by the statute (N.J.S.A. 27:7-36) from acquiring the property in question, the Federal Government may under federal law institute condemnation proceedings to acquire the land  this because the property is to be acquired for the continuation of Route 78 as an Interstate and Defense Highway Route.
*209 However, this has no bearing on or relation to the decision to be rendered. This court will consider the rights and duties and authority of the State Highway Commissioner and the Union County Park Commission as the same are set out and provided for under state laws and under other laws applicable to sovereign states.

I.
At the outset, this court would like to state that it recognizes the delicate issues involved. On the one side, the New Jersey State Highway Commission, as authorized by law, is attempting to acquire property for the construction of a super-highway which is to serve in peace as a highway for civilian vehicular traffic and in wartime as a defense highway. In opposition, the Union County Park Commission stands as a protector of park property in the wake of the passage of the Green Acres Act.
It is plaintiff's first contention that the Park Commission is a creature of the State, holding powers and privileges subject to the sovereign will. In that connection plaintiff makes the following further assertions: (1) the office of State Highway Commissioner was established by the sovereign, acting through its Legislature, N.J.S.A. 27:1-1; (2) in addition to establishing the office of State Highway Commissioner, the Legislature granted to the holder of such office the power to do whatever may be necessary or desirable to effectuate the purpose of the Highway Act, N.J.S.A. 27:7-21; (3) among the powers granted by virtue of N.J.S.A. 27:7-1 et seq. was the power to condemn lands, N.J.S.A. 27:7-22; (4) by virtue of its establishment and the grant of certain powers, plaintiff claims to be the alter ego of the State; (5) as a result of its position (i.e., as alter ego of the State) plaintiff contends that defendant's plea of N.J.S.A. 27:7-36 is a bar to its condemning county park commission lands is of no effect and, in fact, that N.J.S.A. 27:7-36 is unconstitutional because it attempts to limit or restrict the State of New Jersey from exercising its sovereign power of eminent domain.
*210 In response to plaintiff's first contention, as enumerated above, defendant contends that both the Union County Park Commission and the State Highway Department (i.e., Commissioner) are creatures of the legislative will and that the powers held or withheld by the Legislature are determinative of their respective rights inter se. In support of this contention defendant asserts that plaintiff's claim of being the alter ego of the State is not true and its contention as to the unconstitutionality of N.J.S.A. 27:7-36 incorrect. The rationale for this last assertion is that N.J.S.A. 27:7-36 does not involve a surrender of sovereign power because the Legislature, in adoption of this statute, did not purport to divest itself of the sovereign power to take public park property now or in the future; that the statute merely prevents the Highway Department from taking park property by condemnation; that it is a limitation of the Highway Department's discretion and not a surrender of sovereign power, because one cannot "surrender" what one does not have.
Article III, par. 1 of the 1947 New Jersey Constitution provides that "The powers of government shall be divided among three distinct branches, the legislative, executive and judicial." This is in accordance with our system of checks and balances.
It should be noted at this point that the right of eminent domain is of very ancient origin and is inherent in all governments and requires no constitutional provision to give it force. It is an inherent and a necessary right of the sovereignty of the state. Eminent domain is the rightful authority which exists in every sovereignty to control rights of a public nature which pertain to its citizens in common, and to appropriate and control property for public benefit as the public safety, necessity, convenience or welfare may demand; and under New Jersey law the power of eminent domain lies dormant until called into play by the Legislature. Valentine v. Lamont, 13 N.J. 569, 575, 576 (1953); N.J.S.A. 20:1-1 et seq.
*211 The power of eminent domain is a high sovereign power that has been allotted to the legislative branch of the government since Magna Carta. It has been held that constitutions do not give but merely place limitations upon the power of eminent domain which otherwise would be without limitation.
The 1947 Constitution continued this legislative authority to provide for the exercise of the sovereign power of eminent domain restricted only by the pertinent clauses of that basic charter. The restrictions (other than such as relate to general rights) are concerned solely with the matter of compensation to persons whose property is taken under an exercise of this legislative power. In both the New Jersey Constitution of 1844 and the New Jersey Constitution of 1947 these references to compensation, coupled with the clear mandate continuing existing common law principles, constitute recognition of the broad common law authority of the Legislature to control resort to the sovereign power of eminent domain. Abbott v. Beth Israel Cemetery Association of Woodbridge, 13 N.J. 528, 545 (1953).
In State by McLean v. Lanza, 27 N.J. 516 (1958), the court said:
"`Eminent domain' is the power of the State to take private property for public use, for which `just compensation' must be made in virtue of the 1947 State Constitution, Art. I, par. 20, and the Fourteenth Amendment to the Federal Constitution. It is a right founded in the law of necessity which is inherent in sovereignty and essential to the existence of all government, even in its most primitive forms, a right exercised by the Romans whence came the term `eminent domain,' in the construction of roads, aqueducts and similar public works. [Citations omitted]
The constitutional provision is not the source, but rather a limitation upon the exercise of this attribute of sovereignty; and it would seem to be basic to this conception that `when the use to which the property taken is applied in public, the propriety or expediency of the appropriation cannot be called in question by any authority.' United States v. Jones, 109 U.S. 513, 3 S.Ct. 346, 27 L.Ed. 1015 (1883); City of Cincinnati v. Louisville & N.R. Co., 223 U.S. 390, 32 S.Ct. 267, 56 L.Ed. 481 (1911). And see Abbott v. Beth Israel Cemetery Ass'n of Woodbridge, 13 N.J. 528, 543." (at pp. 529-530)
*212 The general right of eminent domain within the limits of a state is vested in the state government as an inherent fundamental or essential sovereign right. Thus, subject to the paramount right of the Federal Government to take property for those public uses which are within the powers conferred on it by the U.S. Constitution, and except to the extent that the exercise of state power is limited by constitutional prohibitions or guarantees within its territorial limits, each state has an unlimited or unrestricted power of eminent domain which it may exercise at will, and under which it may take property regardless of the consent of the owner thereof.
The power of eminent domain possessed by a state is vested in the state legislature, and subject to constitutional prohibitions or limitations each state legislature may provide for the exercise of the power in any manner it sees fit. However, until legislative action is had pointing out the occasions, the modes and the agencies for its exercise, the power lies dormant in the state, so that, unless and until the state legislature enacts a statute providing for the exercise of the power, the state cannot exercise the power. Where legislative power has been given, property may be condemned in the name of the state. 29A C.J.S. Eminent Domain, § 19, pp. 212, 213, 214.
Furthermore, if the sovereign (such as the state or the United States) on its own behalf or for one of its sovereign purposes seeks to acquire property by eminent domain, the character of the res as public property generally has no inhibiting influence upon the exercise of the power. Nichols on Eminent Domain (3d ed.), § 2.2(3). The above rule has been affirmed in substance in Barnegat Light v. Ocean County Board of Freeholders, 44 N.J. Super. 332, 351 (Law Div. 1957), in which the court stated that it was cognizant of the general rule which denies the exercise of the power of eminent domain where the proposed new use would destroy an existing public use or prevent a proposed public use unless the authority to do so has been expressly given by the Legislature or must necessarily be implied, which rule has no application *213 where the condemnor is in essence either the Federal Government or the State. Weehawkin Township v. Erie Railroad Co., 20 N.J. 572, 579 (1956). Thus, under general authority to condemn for public use it is settled that property devoted to one public use may be condemned for another which is of superior rank in respect to public necessity. 18 Am. Jur., § 93, p. 719.
In view of the inherent right of eminent domain vested in the sovereign State of New Jersey, plaintiff argues, in effect, that the exercise of the power of eminent domain cannot be denied where the condemnor is in essence either the Federal Government or the State, even though the proposed new use would prevent a proposed use as a county park, Barnegat Light v. Ocean County Board of Freeholders, supra, and that the property in question now devoted to one public use may be condemned for another use which is of superior right. 18 Am. Jur., supra.
In support of this argument plaintiff contends that the State Highway Department and the State Highway Commissioner are the State  the alter ego of the State. Defendant disputes this. According to Black's Law Dictionary (4th ed. 1951), page 103, "alter ego" means "second self."
The office of State Highway Commissioner was created by N.J.S.A. 27:1-1, which reads as follows:
"The administrative organization heretofore established and designated as the state highway department, hereafter in this title referred to as the department, shall be continued, subject to the provisions of this chapter, as a branch of the executive department of the state government, and the state highway commissioner heretofore appointed pursuant to the provisions of an act entitled `An act to establish the office of state highway commissioner and to define the powers and duties thereof and to vest all the powers and duties now devolved by law upon the state highway department and the state highway commissioner,' approved April twenty-ninth, one thousand nine hundred and thirty-five, is hereby continued in office for the remainder of the term of office for which he was appointed." (Emphasis added)
In other words, the State Highway Department is, by virtue of this statute, a branch of the Executive Department of the State Government.
*214 One of the cases cited by plaintiff in support of his contention that he is the alter ego of the State is Strobel Steel Construction Co. v. State Highway Commission, 120 N.J.L. 298 (E. & A. 1938). This case involved a suit by a contractor against the State Highway Commissioner to recover an alleged balance due to it under a contract whereby it agreed to furnish and deliver all material and labor for the construction of Route 10 in conformity with the specifications of the State Highway Department, and whereby the State Highway Commissioner agreed to pay to plaintiff "for such work when completed in accordance with said plans and specifications the price specified in the contract." The court decided in favor of defendant State Highway Commission, and in doing so said:
"We concur in the conclusion reached by the learned trial court that the State Highway Commission or commissioner, as is now constituted, is an alter ego of the State; that any contract made by the commission or commissioner are clearly contracts of the State; that in order to be sued it was necessary to obtain the consent of the State and that there is nothing to be found in the statute creating the highway commission or any amendment thereto, or in any other statutes, from which consent can be spelled out or inferred." (at p. 20)
In further support of its opinion that the Highway Commissioner is the alter ego of the State, the court cited State Highway Commission v. City of Elizabeth, 102 N.J. Eq. 221 (Ch. 1928). That case concerned the taking by the State Highway Commissioner of property owned by the City of Elizabeth in its municipal capacity. In short, the land to be taken was public land. The court, in discussing the alter ego theory, said:
"In considering the powers of the state highway commission as conferred by the above-quoted language, it must be borne in mind that the state highway commission `is an alter ego of the state' itself. Curtis & Hill Gravel & Sand Co. v. State Highway Commission [91 N.J. Eq. 421] supra. It is, for the purpose of this suit, the state itself, and `not a mere subordinate.' Ibid. And, if the positions of complainant and defendant were reversed, this suit could not be maintained with *215 out the consent of the state. Therefore, when the state of New Jersey, through its Legislature says that the state highway commission shall have power `to do and perform whatever may be necessary or desirable to effectuate the object and purposes' of the act of its creation, it is but one way of saying `You are our agent and representative; and we invest you with all of our powers in furtherance of the objects and purposes for which you are created and this declaration of authority shall be liberally construed.' What more could be asked? By what language could broader powers be given? Under these terms the state highway commission might well say, in the words of a famous French monarch, `L'Etat, c'est moi.' The state highway commission is not a separate and distinct entity upon which the power of eminent domain has been conferred, but it is to all intents and purposes, and within the scope of its authority, the state itself; and its powers within the sphere of its activities are limited only by the powers of the state."
The clear import of this statement is in support of the plaintiff's contention with respect to alter ego. In the Elizabeth case the court stated, in referring to the State Highway Commission, "but it is to all intents and purposes, and within the scope of its authority, the state itself." It might also be mentioned that this statement was made in discussing the State Highway Commission's power of eminent domain.
Thus, it is clear that since the Executive Branch is one of the three branches in the division of power of the State Government (1947 Const. Art. III, par. 1), and since the State Highway Department is a branch of the Executive Department of the State Government (N.J.S.A. 27:1-1, supra), it naturally follows that the State Highway Commissioner is the alter ego of the State for the purposes of building highways  an executive function.
Furthermore, the case of North Bergen Tp. v. Usher, 142 N.J. Eq. 479 (Ch. 1948), holds that a county is a subordinate political division of the State, as is a municipality. It necessarily follows, then, that if a county and municipality are creatures of the State, so is a county park commission which owes its existence to the State. As the court said in State Highway Commission v. City of Elizabeth, supra, the State Highway Commission, being the alter ego of the State of New Jersey, may not be restricted in the exercise of eminent domain *216 by any creature of the State. The court further stated (102 N.J. Eq., at page 227) that while the doctrine of prior public use is applicable as between corporations with equal right of eminent domain under grant from the State, it has no application as between the State and one of its political subdivisions. This is because the State is the sovereign power.
In Miller v. Layton, 133 N.J.L. 323, 1 A.L.R.2d 825 (E. & A. 1945), the court, in citing Curtis & Hill, &c. v. State Highway Commission, 91 N.J. Eq. 421, supra, said: "The State Highway Commission has been described as an alter ego of the state, as indeed it is." (Emphasis added) As recently as 1964, in State Highway Commissioner v. Maas & Waldstein, 83 N.J. Super. 211 (App. Div. 1964), the court observed:
"As for defendant's claim that the Commissioner lacked statutory authority to acquire an interest in a navigable stream, we start with the basic proposition that the State Highway Commissioner is the alter ego of the State. Strobel Steel Construction Co. v. State Highway Commission, 120 N.J.L. 298, 300 (E. & A. 1938), quoting with approval Curtis & Hill Gravel & Sand Co. v. State Highway Commission, 91 N.J. Eq. 421, 430-431 (Ch. 1920). And see N.J.S.A. 27:1-1. R.S. 27:7-22 gives the Commissioner broad powers of condemnation:
`The commissioner may acquire lands or rights therein by * * * condemnation in the manner provided in chapter 1 of the title Eminent Domain (§ 20:1-1 et seq.), and enter upon and take property in advance of making compensation therefor where for any reason he cannot acquire the property by agreement with the owner. * * *'
And R.S. 27:7-21(g) provides that the Commissioner may `do whatever may be necessary or desirable to effectuate the purpose of this title (Title 27, Highways).' The Highway Act should be liberally construed to reflect its purpose, the building of state highways. Taylor-White Extracting Co. v. State Highway Commission, 5 N.J. Misc. 255, 136 A. 183 (Sup. Ct. 1927), affirmed o.b. 105 N.J.L. 498 (E. & A. 1929). The act does not spell out the nature of the specific kinds of property which the State Highway Commissioner may condemn. Certainly, it cannot be said that it was ever intended that the State could not condemn homes, business and industrial properties, farms and orchards, quarries and mines, and other kinds of property for highway construction, absent an explicit legislative description thereof. The Legislature must be taken as having intentionally used *217 the general language it did, and this in aid of one of the primary functions of state government  the construction, maintenance and operation of highways, bridges and tunnels. * * *" (at pp. 217-218)
The Maas & Waldstein case involved the right of the State Highway Commissioner to condemn lands fronting on a navigable stream; in the instant action the Commissioner is condemning lands in a county park. Thus, there is not the slightest doubt in the statutory and decisional law of this State that the State Highway Commissioner is the alter ego of the State, with full authority to condemn the lands for the purpose of highway construction.
After creating the State Highway Department and making it a branch of the Executive Department of the State Government (i.e., the alter ego of the State), the Legislature went on to enumerate in Title 27 of the Revised Statutes the functions, duties and powers of the State Highway Commissioner. One such power is the power to acquire land by condemnation and to enter upon and take property in advance of making compensation when for any reason he cannot acquire the property by agreement with the owner. The statute, N.J.S.A. 27:7-22, reads as follows:
"The commissioner may acquire lands or rights therein by gift devise or purchase, or by condemnation in the manner provided in chapter 1 of the title Eminent Domain (sec. 20:1-1 et seq.) and enter upon and take property in advance of making compensation therefor where for any reason he cannot acquire the property by agreement with the owner.
Upon the commissioner exercising the right of condemnation and entering upon and taking land in advance of making compensation therefor, he shall present a petition, and proceedings shall be had to fix the compensation, to be paid to the owner, as provided in chapter 1 of the title Eminent Domain."
This statute gives the State Highway Commissioner  the alter ego of the State  the right to condemn property  an inherent right which would be dormant except for the provisions of this statute. The language used in this statute conveys a very broad grant of the power to condemn lands. What *218 is interesting to note is that nowhere in this statute are certain lands exempt from the operation of the power. With respect to the use of this power, it is limited to situations where for any reason the property to be taken cannot be acquired by agreement with the owner.
If only this statute were involved, this court would have no problem in reaching a decision, for the statute is clear in that it states that when, for any reason, "he [State Highway Commissioner] cannot acquire the property by agreement with the owner," then he, in the exercise of his power of condemnation, may enter upon and take property in advance of making compensation.

II.
However, as defendant points out, there is another statute which must be considered  N.J.S.A. 27:7-36, which provides as follows:
"In the location of state highway routes the commissioner shall not locate, lay out, construct, use or improve any route in, over, under, through or across a park, reservation or parkway owned by or under the control and jurisdiction of any park commission organized under the provisions of sections 40:37-96 to 40:37-174 of the title Municipalities and Counties, without the consent of the park commission.
The state highway commissioner and the county park commission may contract with each other in relation to the location, laying out, opening, improving, construction and maintenance of a state highway route or routes in, over, under, through or across any park, reservation or parkway owned by or under the control and jurisdiction of the county park commission, fixing the location thereof, and defining the terms and conditions agreed upon for the laying out, opening, improving, construction and maintenance thereof, and until the making and delivery of the contract the state highway commissioner shall not enter in or upon any park, reservation or parkway for the purpose, except for preliminary surveys and examinations, of laying out, opening, improving, constructing, maintaining or using any state highway route in, over, under, through or across any such park, reservation or parkway.
To effectuate the contract the park commission may convey to the state highway commissioner any lands or rights in lands of such park commission in, over, under, through or across which any state highway may, pursuant to the terms of any such agreement, be located."
*219 N.J.S.A. 27:7-22 gives the Commissioner the right to acquire lands by devise, purchase or condemnation, and authorizes him to enter upon and take property in advance of making compensation therefor where for any reason he cannot acquire the property by agreement with the owner. The source of the statute is L. 1927, c. 319, § 111.
N.J.S.A. 27:7-36 does not take away from the Comissioner the right to acquire park lands by condemnation, as defendant contends. There is nothing in this statute  by its express terms  which prohibits the Commissioner from condemning park lands. All that the statute does is to prohibit the Commissioner from entering park lands and taking the property in advance of compensation without the consent of the owner (here the Park Commission)  which right he has with reference to other land under the provisions of N.J.S.A. 27:7-22.
To take away the right of the Commissioner to condemn park lands, which right is inherent in the sovereign and given to the Commissioner by the express terms of N.J.S.A. 22:7-22, this statute (N.J.S.A. 27:7-36) would so have to provide in plain and explicit language. It is interesting to note, also, that the source of N.J.S.A. 27:7-36 is L. 1928, c. 40, § 1, a supplement to L. 1927, c. 319, the source of N.J.S.A. 27:7-22.
With reference to N.J.S.A. 27:7-36, it is also interesting to note that its source, namely, the supplement (L. 1928, c. 40, § 1) was introduced in the Legislature on February 6, 1928 as Senate Bill No. 44. The statement attached to this bill reads:
"The purpose of this act is to give the State Highway Commission and the Essex County Park Commission the right to enter into an agreement for the construction of a State Highway through Weequahic Park in the City of Newark, County of Essex."
The statement says nothing about taking away from the Commissioner the right of eminent domain with reference to park lands. The introducer's statement is relevant evidence on any *220 proper issue as to the legislative intent, although a considered judgment must be exercised in determining the weight to be attached to it. Morris & Essex Investment Co. v. Director of Division of Taxation, 33 N.J. 24, 33, 34 (1960); Deaney v. Linen Thread Co., 19 N.J. 578 (1955).
N.J.S.A. 27:7-36 provides for negotiations for entry and taking before condemnation. It does not alter the fundamental rule of eminent domain that where property cannot be acquired by voluntary arrangement with its owner it may be taken against his will in the exercise of its power of eminent domain, the only limitation being the payment of just compensation. 18 Am. Jur., § 17, page 643. To hold that the property cannot be acquired by the sovereign for a public purpose without the consent or approval of the owner is directly contrary to the concept of eminent domain by which property is acquired for a public purpose without the consent of the owner or against his will.
To adopt defendant's contention with respect to N.J.S.A. 27:7-36 would, in the opinion of this court, read more into the statute than the Legislature intended.
Basically, defendant's claim that this statute prohibits plaintiff from condemning county park commission lands can be analogized to the "prior public use doctrine." This doctrine was set forth in the case of Weehawken Tp. v. Erie R.R. Co., 20 N.J. 572 (1956), as follows:
"Simply stated, the rule denies exercise of the power of condemnation when the proposed use will destroy an existing public use or prevent a proposed public use unless the authority to do so have been expressly given by the Legislature or must necessarily be implied. Ibid; Village of Ridgewood v. Borough of Glen Rock, 15 N.J. Misc. 65 (Sup. Ct. 1936). The principle is applicable, for example, to municipal condemnation of railroad lands, New Jersey Southern Railroad Company v. Long Branch Commissioners [39 N.J.L. 28], supra; railroad condemnation of municipal lands, State, The Mayor and Aldermen of Jersey City v. Montclair Railway Company, 35 N.J.L. 328 (Sup. Ct. 1872), and municipal acquisition of lands of another municipality, Village of Ridgewood v. Borough of Glen Rock, supra, but it has no place when the condemner is, in essence, the sovereign, either federal or state." (Emphasis added) *221 Briefly, the court in Weehawken states that the doctrine of prior public use does not apply when the Federal or State Government is concerned. This being the case, it is submitted that the statute N.J.S.A. 27:7-36, which is so closely analogous to this doctrine, should not be interpreted as a bar to Federal or state acquisition of the public lands in question.
In Goff v. Hunt, 6 N.J. 600 (1951), the court said:
"The statutory provisions we have mentioned are all in pari materia and we must gather the intention and the sense of the law from its object, the nature of the subject matter, and the whole of the context. The parts of a statute are to be viewed in relation to the whole and the motive which led to the making of the law and reconciled if possible. Hackensack Water Co. v. Ruta, et al., 3 N.J. 139, 147 (1949)." (at p. 606)
Here, the statutory provisions are in pari materia. On this basis, the sense and intention of the law must be gathered from its object. The object of Title 27 of the Revised Statutes is the building of roads and not the protection of parks. The Legislature, in enacting this Title and giving to the State Highway Commissioner the power to condemn lands, must have intended it to be used for the object for which the Title was intended, namely the building of roads.
One final aspect should be considered in conjunction with N.J.S.A. 27:7-36. In Title 40, the provisions of which establish the county parks, there is an interesting provision. This is N.J.S.A. 40:37-86, which prohibits the taking of county park lands for the construction of railroads. While the Legislature saw fit to insert such a provision in that Title, it did not see fit to prohibit the construction of highways across county park lands. Also, it is significant to note that N.J.S.A. 40:37-86 was repealed as of January 5, 1961.
Furthermore, as stated above, under N.J.S.A. 27:7-36 it is provided that the Highway Commission shall not "locate, lay out, construct * * * any route across a park * * * without the consent of the park commission," and the statute gives to the county park commission the power to contract with the State Highway Commissioner for the sale of park *222 lands needed for highway construction. It also provides that no action can be taken for actual construction until a contract is negotiated. Should all possibilities of settlement become exhausted then the Highway Commissioner must turn to his powers under N.J.S.A. 27:7-22.
These two provisions (N.J.S.A. 27:7-22 and 27:7-36), when read together, allow plaintiff to use his power of condemnation after having exhausted all possibility of agreement with the owner.
On the basis of its interpretation of N.J.S.A. 27:7-36, this court feels that the statute has not impliedly been repealed by L. 1965, c. 79, as plaintiff contends. As defendant points out, implied repealer is not favored in law. This was stated in Swede v. City of Clifton, 22 N.J. 303 (1956):
"The question of repeal is essentially one of legislative intention; and there is a presumption as a matter of interpretive principle and policy against an intent to effect a repeal of legislation by mere implication. The purpose so to do must be free from all reasonable doubt. Repeals by implication are not favored in the law; and where the statutory provisions may reasonably stand together, each in its own particular sphere of action, there is not the repugnancy importing the design to repeal the earlier provision." (at p. 317)
The test of implied repealer is whether the two statutes are repugnant, as tested by the intent of the Legislature. Since the court has already stated, in effect, that N.J.S.A. 27:7-36 is a limitation on the plaintiff's power and authority to enter park lands before condemnation, and not a prohibition on plaintiff's authority to condemn park lands, the question of implied repealer is disposed of and so need not be considered. There is no repugnancy between the two provisions. As was stated previously, N.J.S.A. 27:7-36 requires the Highway Commissioner to do all that is possible to reach an agreement with a park commission as to the layout and construction of highways on park lands. Failing in this, he can take steps to utilize the power granted him in N.J.S.A. 27:7-22. In this way both statutory provisions in Title 27 *223 can be read to carry out the legislative intent, which was to build highways. In essence, there is no repugnancy to suggest the repealing of N.J.S.A. 27:7-36 by implication.
Furthermore, as a result of the interpretation of N.J.S.A. 27:7-36 enunciated in this opinion, it becomes clear that this statute is not unconstitutional. The State and its alter ego, the Highway Commissioner, have not surrendered, alienated or contracted away their power to take lands by eminent domain. In the final analysis, the State is not prohibited from taking county park commission property for another public use by eminent domain.
In conclusion, this court is of the opinion that its interpretation of these two apparently conflicting statutes is the one most suited to carrying out the intent of the Legislature. In the case of State Highway Commission v. City of Elizabeth, supra, the court stated as follows:
"My study of the various state highway acts and the most recent revision leads me to the conclusion that the Legislature intended to confer complete power and the widest discretion upon the commission, in order that the construction of the state highway system might be facilitated in the greatest degree." (102 N.J. Eq., at p. 228)
Therefore, it is the opinion of this court that the motion made by defendant to dismiss the complaint should be denied and the motion made by plaintiff to dismiss the first separate defense of the answer should be granted.
An appropriate order shall be submitted in accordance with R.R. 4:55-1.